[No. B075767. Second Dist., Div. Two. Dec. 19. 1994.]

SUSAN H., Plaintiff and Appellant, v.
JACK S., Defendant and Respondent.

## COUNSEL

Arthur E. Schwimmer for Plaintiff and Appellant.

Glen H. Schwartz and Larry Hoffman for Defendant and Respondent.

## OPINION

**BOREN, P. J.—** ▇ Former section 621 of the Evidence Code[1] provided that "the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage" absent rebuttal under certain specified circumstances, inapplicable here, within two years of the child's birth. The sole issue before us is whether the trial court erred in applying this presumption to grant summary judgment in favor of the putative father, who denied paternity, and against the mother after dissolution proceedings with her husband resulted in an order awarding her and her husband joint legal and physical custody of their four-year-old child. We conclude the trial court properly applied the presumption of paternity under the circumstances of this case, and accordingly affirm.

### FACTS

Susan H. married John A. on May 5, 1985. In September of 1987, Susan H. became pregnant and gave birth on June 23, 1988, to Michael, the minor

---

[1]During the pendency of this appeal, Evidence Code section 621 was repealed effective January 1, 1994, and replaced by Family Code sections 7540 and 7541 without substantive change. We will refer to the Evidence Code.

who is the subject of the present paternity action. Susan H. and John A. lived apart from each other from approximately September 1989 to April 1990. At all other times they resided together during their marriage until September 8, 1991, when Michael was over three years old, and Susan H. and John A. permanently separated.

The following April, when Michael was approximately four years old, Susan H. commenced a marital dissolution proceeding in Ventura County Superior Court. In their pleadings in the dissolution matter, Susan H. and John A. both alleged that Michael was a child of their marriage. They stipulated to an order awarding primary physical custody of the child to Susan H. and secondary physical custody to John A. The order issued July 22, 1992, and provided that Michael would be with John A. for "reasonable times as agreed between the parties," including seven days per month and specified periods during holidays and school vacations. The court also directed John A. to pay Susan H. "family support in the amount of $4,740 plus 50% of the net commissions paid [to him]."

Approximately one month later, on August 26, 1992, Susan H. filed the paternity action in the present case in the Los Angeles County Superior Court, seeking to establish that another man, Jack S., is Michael's father. Susan H. did not join Jack S. as a party to the dissolution proceeding, nor did she name John A. as a party in the paternity action. Susan H. also did not seek to consolidate or coordinate the two actions, but prosecuted both actions concurrently, asserting John A.'s paternity in the dissolution proceeding and Jack S.'s paternity in the paternity action.

John A. discovered the paternity action when his lawyer received a telephone call from Jack S.'s lawyer. Soon thereafter, in the dissolution proceeding John A. filed an order to show cause requesting blood tests to resolve the question of his paternity. John A. sought a stay of the support order pending return of the blood test results, but requested that the custody order "remain as is."[2] John A. also suggested consolidating the paternity and dissolution matters.

Jack S. filed an answer in the paternity action, denying the material allegations and alleging that Susan H.'s action was barred by Evidence Code former section 621, subdivision (a), which provided that "the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." Jack S. filed a motion for summary

---

[2]Thereafter, Susan H. amended her complaint in the paternity action to identify the dissolution proceeding as a pending action concerning Michael's custody and to specify John A. as another person who claimed custodial rights.

judgment based upon the conclusive presumption. The motion was supported by excerpts from the deposition of Susan H. which established that Susan H. and John A. were married and cohabiting when Michael was conceived, and that John A. was neither impotent nor sterile.

In response to the motion for summary judgment, Susan H. noted that the results of the court-ordered blood tests established that John A. was not Michael's father and asserted it was in the child's best interests to grant her motion for blood testing to establish Jack S.'s identity as the biological father. Susan H. did not file any controverting evidence or otherwise dispute any of the foundational facts which gave rise to the legal presumption of John A.'s paternity. Nor did Susan H. assert any other material facts regarding the application of the legal presumption of paternity. At the hearing on Jack S.'s motion for summary judgment, Susan H.'s opposition to the motion was premised upon her claim that the application of the conclusive presumption to bar Susan H.'s paternity action against Jack S. violated Michael's "right to know the identity of his biological father."

The court assumed that Michael's interest in learning the identity of his biological father was a right worthy of protection under the constitution, but found it outweighed by the state's competing interest, based upon its legitimate concern for the child's welfare, in preserving Michael's relationship with John A., who had assumed a parental role in Michael's life. The court also noted the state's interest in the preservation of the stability of the family, even during dissolution of the marriage. Accordingly, the court deemed the presumption of paternity not unconstitutional as applied.

On March 11, 1993, the court entered summary judgment in favor of Jack S. and declared his nonpaternity "by virtue of the conclusive presumption of Evidence Code § 621." Susan H. appeals.

### DISCUSSION

The conclusive presumption of paternity codified in Evidence Code former section 621, subdivision (a), is a rule of substantive law. (*Estate of Cornelious* (1984) 35 Cal.3d 461, 464 [198 Cal.Rptr. 543, 674 P.2d 245].) The statute reflects the ancient principle, established even prior to common law, "that when husband and wife are living together as such, the integrity of the family should not be impugned. 'The husband is deemed responsible for his wife's child if it is conceived while they are cohabiting; he is the *legal* father and the issue of biological paternity is irrelevant.' [Citation.] The rule promotes important social policies: preservation of the integrity of the family, protection of the welfare of children by avoiding the stigma of

illegitimacy and keeping them off welfare rolls, and insurance of the stability of titles and inheritance. [Citations.]" (*Id.* at pp. 464-465.)

There has been much criticism of the conclusive presumption's blindness to biological paternity in an era when scientific advances in blood testing can reliably overcome the conclusive presumption of paternity. (*Estate of Cornelious, supra,* 35 Cal.3d at p. 465.) It has been observed that ". . . the original reasons for the conclusive presumption of paternity are out of place in a world in which blood tests can prove virtually beyond a shadow of a doubt who sired a particular child and in which the fact of illegitimacy no longer plays the burdensome and stigmatizing role it once did." (*Michael H.* v. *Gerald D.* (1989) 491 U.S. 110, 140 [105 L.Ed.2d 91, 110, 109 S.Ct. 2333] (dis. opn. of Brennan, J.).)[3]

█ Although section 621 has consistently survived constitutional attack (*Estate of Cornelious, supra,* 35 Cal.3d at p. 465), despite its questionable underpinnings in this modern era, the conclusive presumption as applied in any given case may be challenged on due process grounds. (*Id.* at p. 466.) Whether the conclusive presumption denies due process by preventing a party from establishing the natural or biological father "must thus be resolved by weighing the competing private and state interests." (*In re Lisa R.* (1975) 13 Cal.3d 636, 648 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017]; see *Michelle W.* v. *Ronald W., supra,* 39 Cal.3d at p. 360.) A balancing test is applied to determine whether operation of section 621 denies due process. (*Michael H.* v. *Gerald D., supra,* 191 Cal.App.3d at p. 1008.)

█ In the present case, in weighing the competing private and state interests, we find that Susan H. has failed to establish that her child has an interest worthy of constitutional protection which was impaired by application of the conclusive presumption. The application of the statute also furthers the substantial state interest in preserving the extant familial relationship between the child and the presumed father, albeit in the context of support obligations and visitation rights flowing from the marital dissolution.

Susan H. contends that Michael's interest which was infringed by application of the conclusive presumption was his interest in knowing the identity

---

[3]It has been noted that in view of the passage of the Uniform Parentage Act and its abolition of any incidents of illegitimacy, the purported stigma of illegitimacy is of no legal consequence. (*Michelle W.* v. *Ronald W.* (1985) 39 Cal.3d 354, 362, fn. 5 [216 Cal.Rptr. 748, 703 P.2d 88]; *County of Orange* v. *Leslie B.* (1993) 14 Cal.App.4th 976, 980, fn. 4 [17 Cal.Rptr.2d 797].) Nonetheless, a court may properly act to protect a minor from " 'the social stigma of being branded a child of an adulterous relationship' [citation]." (*Michael H.* v. *Gerald D.* (1987) 191 Cal.App.3d 995, 1010 [236 Cal.Rptr. 810], affd. by plur. opn. by Scalia, J. (1989) 491 U.S. 110 [105 L.Ed.2d 91, 109 S.Ct. 2333].)

of his biological father. She thus seeks a declaration of paternity so the true facts can be known. However, blood tests have already indicated that John A. is not Michael's biological father, and Susan H. apparently had sufficient grounds to believe who the biological father is, as evidenced by her paternity suit. The true facts are thus sufficiently known to Susan H., though there is no formal judicial declaration of paternity.

It is also questionable whether it is to the child's benefit, emotionally and developmentally, to establish biological parenthood for some abstract interest in truthfulness. We acknowledge that ". . . the establishment of the parent-child relationship is the most fundamental right a child possesses to be equated in importance with personal liberty and the most basic of constitutional rights." (*Ruddock* v. *Ohls* (1979) 91 Cal.App.3d 271, 277-278 [154 Cal.Rptr. 87].) Nonetheless, the conclusive presumption facilitates identification of the child's father by establishing, as a matter of law, that the father is the man with whom the child has had an ongoing father-child relationship. Although the application of the conclusive presumption may not comport with biological reality, Evidence Code former section 621 does not purport to determine factually the biological paternity of a child, nor do judges create or sever genetic bonds. (*Lehr* v. *Robertson* (1983) 463 U.S. 248, 261 [77 L.Ed.2d 614, 626, 103 S.Ct. 2985]; *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 619 [7 Cal.Rptr. 129, 354 P.2d 657]; *Michael H.* v. *Gerald D.*, *supra*, 191 Cal.App.3d 995, 1009.)

Susan H. seeks not only a declaration of biological paternity, but also, as alleged for the first time now on appeal, certain "financial and emotional benefits" and alludes to amending the complaint to impose parental obligations and rights upon Jack S., the alleged biological father. However, "[p]arental [obligations and] rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." (*Caban* v. *Mohammed* (1979) 441 U.S. 380, 397 [60 L.Ed.2d 297, 310, 99 S.Ct. 1760].) Here, the absence of any relationship whatsoever and Jack S.'s lack of interest in creating one, as revealed by his summary judgment motion, would likely only cause confusion, uncertainty and embarrassment to the child if the paternity action resulted in Jack S.'s right to visitation and an obligation to support the child financially.

As observed in *Lehr* v. *Robertson*, *supra*, 463 U.S. at page 262 [77 L.Ed.2d at page 627], "The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable

contributions to the child's development." Obviously, Jack S. has declined the opportunity to make any such contribution to Michael's life. Accordingly, Susan H. has failed to establish that her paternity suit, with the child as the real party in interest (see *Ruddock* v. *Ohls, supra*, 91 Cal.App.3d at p. 283), would promote any of the child's interests worthy of consideration.[4]

On the other hand, applying the statutory presumption furthers the state's interest in preserving the familial relationship between the child and the presumed father, even in the context of dissolution proceedings. Susan H. acknowledges the state's significant and legitimate interests in preserving the integrity of the family unit and protecting the child's welfare, but argues that neither interest was promoted by applying the conclusive presumption in the present case. According to Susan H., the statutory presumption cannot promote the state's interest in preserving the integrity of the family where the mother's marriage to the presumed father is ending in divorce. To the contrary, although the conclusive presumption can only arise in the context of a marital relationship, the presumption is not rendered irrelevant upon marital dissolution. The familial relationship between the presumed father and the child does not necessarily terminate upon dissolution of the marriage.

As the trial court aptly observed, the state has a legitimate interest in the "social stability of the dissolving family" and an interest in not only "preserving an intact family, but preserving the integrity of the divorcing family." For example, the conclusive presumption of paternity has been invoked by the mother to obtain a support order against the husband in dissolution proceedings (*In re Marriage of B.* (1981) 124 Cal.App.3d 524 [177 Cal.Rptr. 429]), by the husband to defend his relationship with the child even where the marriage has been dissolved (*Vincent B.* v. *Joan R.* (1981) 126 Cal.App.3d 619 [179 Cal.Rptr. 9]), as well as by the presumed father after the mother divorced him, obtained child support and then married the biological father. (*Michelle W.* v. *Ronald W., supra*, 39 Cal.3d 354.)

Most significantly, application of the conclusive presumption of paternity in the present case also promotes the state's interest in the child's welfare. The state has an "interest in preserving and protecting the developed parent-child and sibling relationships which give young children social and emotional strength and stability." (*Michelle W.* v. *Ronald W., supra*, 39 Cal.3d at

---

[4]The record does not reveal the comparative financial status of John A. and Jack S., and we decline to speculate as to any hidden fiscal agenda by Susan H. Neither the mother nor the child has any constitutional right "to choose [the child's father], regardless of the financial or other benefits which, to the minor, might be advantageous." (*Ferguson* v. *Ferguson* (1981) 126 Cal.App.3d 744, 748 [179 Cal.Rptr. 108].)

p. 363.) This interest is served notwithstanding termination of the mother's marital relationship with the presumed father. " '[I]n the case of an older child [over two years of age] the familial relationship between the child and the man purporting to be the child's father is considerably more palpable than the biological relationship of actual paternity. A man who has lived with a child, treating it as his son or daughter, has developed a relationship with the child that should not be lightly dissolved and upon which liability for continued responsibility to the child might be predicated. This social relationship is much more important, to the child at least, than a biological relationship of actual paternity. . . .' " (*Estate of Cornelious, supra,* 35 Cal.3d at pp. 465-466 [explaining the Legislature's rationale for the statutory exception to the conclusive presumption, which allows the mother or presumed father to present blood test evidence disputing presumed paternity but only within two years of the child's birth].)

In the present case, for the approximately four-year period since Michael's birth, John A. assumed a parental role in Michael's life. In the proceeding for dissolution of his marriage to Susan H., John A. alleged that Michael was a child of the marriage. He sought and was awarded joint custody of the child and was ordered to pay family support. Moreover, even after John A. learned that he was not biologically related to the child, he requested that the custody order "remain as is."[5]

Finally, Susan H.'s reliance upon *County of Orange* v. *Leslie B., supra,* 14 Cal.App.4th 976, is unavailing. The court in *Leslie B.* observed that the conclusive presumption was not designed to allow a father to avoid responsibility for a child he fathered and was not "intended as a financial prophylactic for men who have affairs with married women." (*Id.* at p. 981.) However, the case does not stand for the broad proposition that an alleged biological father is barred from invoking the conclusive presumption as a defense in a paternity action. Rather, *Leslie B.* is merely an extension of a well-reasoned line of cases holding the conclusive presumption inapplicable "when its underlying policies are not furthered." (*Id.* at p. 980.)

In *Leslie B.*, the statutory presumption was deemed inapplicable, not simply because it had been invoked by the biological father. The presumption was inapplicable, as it was in other similar cases (e.g., *In re Lisa R.,*

---

[5]Susan H. emphasizes that the trial court held no hearing regarding the nature of the personal and familial relationship between Michael and John A. However, Susan H.'s response to the summary judgment motion presented no triable issue of material fact. Her response failed even to attempt, by declaration or by reference to a deposition or another discovery product, to refute the otherwise apparent existence of a palpable and formative familial relationship between Michael and John A. which had developed during an approximately four-year period of time.

*supra*, 13 Cal.3d 636; *In re Melissa G.* (1989) 213 Cal.App.3d 1082 [261 Cal.Rptr. 894]), because the presumed father had never established a familial relationship with the child and, in fact, was a total stranger to the child. Under such circumstances, application of the conclusive presumption of paternity "would lead to a ridiculous result. . . . [The child] would be 'given' a father whom [the child] knows is not her natural father, to preserve the integrity of a family unit that never existed." (*County of Orange v. Leslie B., supra,* 14 Cal.App.4th at p. 983.) As in other cases where the biological father invoked the conclusive presumption as a defense to a support action (see, e.g., *Ferguson v. Ferguson, supra,* 126 Cal.App.3d 744; *Hess v. Whitsitt* (1967) 257 Cal.App.2d 552 [65 Cal.Rptr. 45, 32 A.L.R.3d 1297]; *Daniels v. Daniels* (1957) 156 Cal.App.2d 371 [319 P.2d 662]; *Hill v. Johnson* (1951) 102 Cal.App.2d 94 [226 P.2d 655]), Jack S. is not precluded from invoking the statutory presumption of paternity.

Accordingly, the reason for not applying the conclusive presumption in *County of Orange v. Leslie B., supra,* 14 Cal.App.4th 976, and other similar cases, i.e., the absence of any familial relationship between the presumed father and the child, does not exist in the present case. John A. is no stranger to Michael. John A. assumed the paternal role in Michael's life, living with the child and mother as a family unit until the child was over three years of age. John A. maintained his paternal relationship even after he separated from Susan H. and continued to share custody even during the pendency of the present paternity action.

The undisputed material facts before the trial court therefore support application of the conclusive presumption. The court properly granted summary judgment in favor of Jack S.

### DISPOSITION

The judgment is affirmed.

Fukuto, J., and Nott, J., concurred.