[No. A063987. First Dist., Div. Four. Mar. 31, 1995.]

STEVEN W., Plaintiff and Respondent, v.
MATTHEW S., Defendant and Appellant.

**COUNSEL**

Robert E. Amos for Defendant and Appellant.

Glen H. Schwartz and Larry M. Hoffman for Plaintiff and Respondent.

## OPINION

**PERLEY, J.**—The case before us presents a unique and difficult question. Two men assert a parental interest in a child, and while both have a basis for their claim, the law allows for only one legal father. Matthew S. contends that the trial court erred in refusing to apply former Evidence Code section 621, subdivision (a)[1], conclusively presuming him to be the father of the minor child, Michael. He also alleges that the trial court's decision was premature and that the best interests of the child should be explored. We conclude that Evidence Code section 621 did not apply and that the issue of paternity was properly decided before considering custody and visitation.

### I. FACTUAL BACKGROUND

Matthew and Julie were married in 1982. They had one child in 1983 whose parentage is not at issue. In 1986, Julie moved out of the apartment they shared and moved in with respondent Steven W. with whom she was romantically involved. Julie told Steven that she was divorcing Matthew. Divorce papers were prepared and Julie and Steven made plans to marry.

Steven was unaware that Julie never filed for divorce and that she maintained a sexual relationship with Matthew. Matthew was seemingly unaware that Julie was sexually involved with Steven. In 1987, Julie discussed having another child with each man independently.

In May 1987, Julie became pregnant while on a romantic weekend tryst with Matthew. She continued to live with Steven and initially told both men that they were the father. Steven, however, participated in Lamaze classes, doctor's appointments, shopping for baby supplies, and baby showers and was in the delivery room when Michael was born. Steven was listed as the father on the birth certificate and the child was given his surname. Matthew was not informed of the birth until weeks later, and was told that he was not the father.

Steven and Julie purchased a home together shortly after Michael was born. Steven fed, bathed and cared for the child, and participated in all decisions regarding health care, babysitting and education from the time of Michael's birth. Matthew did not actually see Michael until he was two or three months old.

---

[1]Evidence Code section 621 was repealed effective January 1, 1994, and replaced by Family Code sections 7540 and 7541 without substantive change. We will refer to the Evidence Code.

Steven and Julie continued to live together until 1990 when Steven discovered that Julie was deceiving him about her relationship with Matthew. Steven moved out of the residence he shared with Julie, but continued to share custody and support of Michael.

At the end of 1990, Matthew moved into the residence with Julie and lived there for a year. Throughout this time period, Steven continued to have custody of Michael three days a week. He was listed as the father on the school records, and attended school meetings regarding Michael; Matthew did not.

Steven instituted this action against Julie and Matthew on December 12, 1990, asserting that he was Michael's father. Julie's answer admitted Steven's paternity. Matthew failed to answer the complaint, and a default judgment was entered against him five months later. In February 1992, Matthew moved for relief from the default judgment. He also petitioned to have his marriage with Julie dissolved. The default judgment was set aside on April 28, 1992. Steven was thereafter joined as a party in the dissolution proceeding. The issues pertaining to paternity, custody and support of Michael were reserved for trial, and the paternity issue was then bifurcated, pursuant to Steven's unopposed motion, to be tried prior to the issues of custody, visitation, and support. Prior to trial, Julie and Matthew submitted to blood tests which revealed that Matthew was Michael's biological father.

The trial court ruled that both Steven and Matthew qualified as Michael's "presumed father" under the Uniform Parentage Act.[2] The court concluded, however, that Matthew was estopped from invoking his presumptions of paternity and rebutting Steven's paternity, and that Steven's presumption of paternity was controlling because he had the "more prolonged, intensive and continuing relationship" with Michael.

## II. DISCUSSION

### A.

■ We first address Steven's contention that this court need not review the merits of the trial court's ruling on paternity because the trial court abused its discretion in setting aside Matthew's default judgment. He argues that there was no evidence that Matthew's delay in seeking relief under Code of Civil Procedure section 473 was due to extrinsic fraud or mistake.

---

[2]The Uniform Parentage Act, formerly Civil Code section 7000 et seq., was repealed and reenacted as part of the Family Code effective January 1, 1994. Because the order here was made prior to the effective date of the new law, it is governed by former Civil Code section 7000 et seq. (Fam. Code, § 4, subd. (c).)

■ Code of Civil Procedure section 473 creates a six-month statute of limitations for setting aside a default judgment; the court, however, has inherent equity power to set aside a default based on extrinsic fraud or mistake. (*In re Marriage of Baltins* (1989) 212 Cal.App.3d 66, 80 [260 Cal.Rptr. 403].) The most common ground for equitable relief is extrinsic fraud, and the strongest examples of extrinsic fraud occur when the aggrieved party is induced not to appear, relying on representations, in the context of a confidential relationship, that his interests will be protected. (8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 205, p. 604.) " '[E]xtrinsic fraud is a broad concept that "tend[s] to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing." ' " (*In re Marriage of Baltins, supra,* 212 Cal.App.3d at p. 83.) "[I]n some cases, 'the ground of relief is not so much the fraud or other misconduct of the [other party] as it is the excusable neglect of the [moving party] to appear and present his [or her] claim or defense. If such neglect results in an unjust judgment, *without a fair adversary hearing,* the basis for equitable relief is present, and is often called "extrinsic mistake." ' " (*Ibid.,* citing 8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, § 211, pp. 614-615.)

■ In the present case, the trial court did not abuse its discretion in finding excusable neglect. There was ample evidence that Matthew relied on Julie's assurances that his interests would be protected. Julie told Matthew that her attorneys were handling the matter and the attorney fees were paid from a line of credit that they jointly held. Matthew was therefore entitled to relief from the default judgment.

## B.

■ Matthew contends that the conclusive presumption of former Evidence Code section 621 precludes the trial court's finding that Steven is Michael's father. This contention lacks merit because Matthew failed to establish the cohabitation element of section 621.

Former section 621, subdivision (a) of the Evidence Code provided that ". . . the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." The married couple must be cohabiting to trigger this conclusive presumption. (*City and County of San Francisco* v. *Strahlendorf* (1992) 7 Cal.App.4th 1911 [9 Cal.Rptr.2d 817].) Cohabitation has acquired a "peculiar and appropriate meaning" through its use in defining common law marriages. (*Kusior* v. *Silver* (1960) 54 Cal.2d 603, 612 [7 Cal.Rptr. 129, 354 P.2d 657].) The

settled meaning of cohabitation is " 'living together as husband and wife.' " (*Id.* at p. 616.) In *Kusior*, the California Supreme Court reversed a line of cases which held mere access or opportunity for access sufficient to satisfy the cohabitation requirement. (*Ibid.*) The court specifically incorporated the definition of cohabitation previously used in determining common law marriage: " 'And by cohabitation is not meant simply the gratification of the sexual passion, but "to live or dwell together, to have the same habitation, so that where one lives and dwells there does the other live and dwell also." ' " (*Kusior* v. *Silver, supra,* at p. 612, citing *Kilburn* v. *Kilburn* (1891) 89 Cal. 46, 50 [26 P. 636].)

Here, the evidence shows that Matthew and Julie were not cohabiting within the meaning of the statute. Julie was living with Steven, not Matthew at the time that Michael was conceived and born. Cohabitation implies more than a stolen weekend or a sexual encounter; it is living together in a marital household, sharing day-to-day life. (See, *Kusior* v. *Silver, supra,* 54 Cal.2d 603, 612-613, fn. 3.)

Appellant cites *Jackson* v. *Jackson* (1967) 67 Cal.2d 245 [60 Cal.Rptr. 649, 430 P.2d 289] as support for the proposition that a weekend trip suffices as cohabitation. *Jackson* implies that a newlywed couple is cohabiting while on their honeymoon. The case, however, is inapposite. A couple on their honeymoon is embarking on their married life. Given their circumstances, the only marital household they have yet had an opportunity to create is their honeymoon suite. There is no indication in *Jackson* that the wife's primary residence was with someone other than her husband.

Here, Julie was cohabiting with Steven during 1987. Julie's weekend encounter with Matthew away from their respective residences does not amount to cohabitation within the meaning of former Evidence Code section 621. The trial court erred in its interpretation of cohabitation; the conclusive presumption of paternity does not apply.

## C.

Notwithstanding the trial court's error that the presumption of former Evidence Code section 621 was applicable, the court determined that Michael's best interests precluded its implementation. The court further found that the presumption of Steven's paternity under former Civil Code

section 7004, subdivision (a)(4) was controlling and that it rebutted Matthew's presumption of paternity under former Civil Code section 7004, subdivision (a)(4).[3] Matthew concedes that Steven is a presumed father under former Civil Code section 7004, subdivision (a)(4), but he argues that he also is a presumed father under subdivisions (a)(1) and (a)(4) of section 7004 and that his presumed father status controls.[4] We conclude that the trial court properly determined that the presumption of Steven's paternity was controlling.

Former section 7004, subdivision (b) of the Civil Code provided that when presumptions conflict, "the presumption which on the facts is founded on the weightier consideration of policy and logic controls." The paternity presumptions are driven by state interest in preserving the integrity of the family and legitimate concern for the welfare of the child. The state has an "'interest in preserving and protecting the developed parent-child . . . relationships which give young children social and emotional strength and stability.'" (*Susan H.* v. *Jack S.* (1994) 30 Cal.App.4th 1435, 1442 [37 Cal.Rptr.2d 120], citing *Michelle W.* v. *Ronald W.* (1985) 39 Cal.3d 354, 363 [216 Cal.Rptr. 748, 703 P.2d 88].) The courts have repeatedly held, in applying paternity presumptions, that the extant father-child relationship is to be preserved at the cost of biological ties. (*Michelle W.* v. *Ronald W.*, *supra*, at p. 363 [alleged biological father's abstract interest in establishing paternity not as weighty as the state's interest in familial stability and the welfare of the child]; *Comino* v. *Kelley* (1994) 25 Cal.App.4th 678, 684 [30 Cal.Rptr.2d 728] [court refused to apply conclusive presumption of Evidence Code section 621 to deny the child the only father she had ever known].)

"'"[I]n the case of an older child [over two years of age] the familial relationship between the child and the man purporting to be the child's father is considerably more palpable than the biological relationship of actual paternity. A man who has lived with a child, treating it as his son or daughter, has developed a relationship with the child that should not be lightly dissolved . . . . This social relationship is much more important, to the child at least, than a biological relationship of actual paternity. . . ."'" (*Susan H.* v. *Jack S.*, *supra*, 30 Cal.App.4th at p. 1443, quoting *Estate of*

---

[3]Civil Code section 7004 was repealed and replaced by Family Code sections 7611 and 7612 without substantive change. Former Civil Code section 7004, subdivision (a)(4) provides presumed father status when a man receives a child into his home and openly holds out the child as his natural child.

[4]Subdivision (a)(1) of former section 7004 sets forth a presumption of fatherhood for a man who is married to the child's mother when the child is born during the marriage. We note that pursuant to former Evidence Code section 895.5 (now Fam. Code, § 7555) appellant was also entitled to a rebuttable presumption of paternity on the basis of the blood test evidence.

*Cornelious* (1984) 35 Cal.3d 461, 465-466 [198 Cal.Rptr. 543, 674 P.2d 245].)

 Here, despite Matthew's biological ties to Michael, he acquiesced in Steven's assumption of the role of father in Michael's life. He never participated in any decisions regarding Michael's health or education but deferred to Steven. Steven continued to share custody of Michael even after his relationship with Julie ended.

The record establishes that Steven developed the enduring father-child relationship with Michael. He openly held Michael out as his son to his family, to the school, to the world. He signed the birth certificate, gave Michael his surname, and participated in all aspects of his emotional and financial support for the first four years of the child's life. Given the strong social policy in favor of preserving the ongoing father and child relationship, the trial court did not err in finding that the conflict between the presumptions weighed in favor of Steven.

Because we have concluded that the presumption of Steven's paternity was controlling, we need not decide whether Matthew was estopped from establishing his paternity.

### D.

 Matthew further alleges that the trial court's judgment was premature and that more evidence should be heard on what is in the best interests of the child. That consideration is not before us. The issues were properly bifurcated with consent of all the parties. If Matthew had any objection to the bifurcation, he waived it. An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 311, p. 321.) Failure to object to the ruling or proceeding is the most obvious type of implied waiver. (9 Witkin, Cal. Procedure, *supra*, § 307, p. 317.) Michael's best interests will be fully explored when the court determines custody and visitation rights.

### III. Conclusion

Judges neither create nor sever genetic bonds (*Lehr* v. *Robertson* (1983) 463 U.S. 248, 261 [77 L.Ed.2d 614, 626, 103 S.Ct. 2985]), and our decision today does not limit provisions for visitation by all interested parties if it is

in the best interests of the child. The judgment is affirmed. Costs are awarded to respondent.

Anderson, P. J., and Reardon, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 29, 1995.