[No. S100490. June 6, 2002.]

In re NICHOLAS H., a Person Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
KIMBERLY H., Defendant and Appellant;
THOMAS G., Defendant and Respondent.

COUNSEL

Janet H. Saalfield, under appointment by the Supreme Court, and Sheri M. Cohen for Defendant and Appellant.

Richard E. Winnie, County Counsel, Tamara M. Wiggins and Anthony E. Scarr, Deputy County Counsel, for Plaintiff and Respondent.

Frank H. Free, under appointment by the Supreme Court, for Defendant and Respondent.

Francia M. Welker, under appointment by the Supreme Court, for Minor.

Janet G. Sherwood and Donna Furth for Northern California Association of Counsel for Children as Amicus Curiae on behalf of Minor.

Shannan Wilber and Joan Heifetz Hollinger for Legal Services for Children and Joan Heifetz Hollinger, individually and as Director of the Child Advocacy Clinic of the University of California, Berkeley School of Law as Amici Curiae on behalf of Minor.

OPINION

BROWN, J.—A man who receives a child into his home and openly holds the child out as his natural child is presumed to be the natural father of the child. (Fam. Code, § 7611, subd. (d); hereafter section 7611(d).)[1] The presumption that he is the natural father "is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence." (§ 7612, subd. (a); hereafter section 7612(a).) The question presented by this case is whether a presumption arising under section 7611(d) is, under section 7612(a), necessarily rebutted when the presumed father seeks parental rights but admits that he is not the biological father of the child.

The answer to this question is of the gravest concern to the six-year-old boy involved in this case. While his presumed father is providing a loving home for him, his mother has not done so, and his biological father, whose identity has never been judicially determined, has shown no interest in doing so. Therefore, if, as the Court of Appeal concluded, the juvenile court had no discretion under section 7612(a) but to find that the presumption arising under section 7611(d) was rebutted by the presumed father's admission that

---

[1] All further statutory references are to the Family Code unless otherwise specified.

he is not the biological father, this child will be rendered fatherless and homeless.

This harsh result, we conclude, is not required by section 7612(a). The Court of Appeal's paraphrase of section 7612(a) reveals the fundamental flaw in its analysis. "[W]e are not free to ignore the statute, which expressly states that the section 7611(d) presumption *is* rebutted by clear and convincing evidence that the presumed father is not the child's natural father." (Italics added.) However, that is not what section 7612(a) says. Rather, the section provides that "a presumption under Section 7611 is a rebuttable presumption affecting the burden of proof and *may* be rebutted *in an appropriate action* only by clear and convincing evidence." (§ 7612(a), italics added.)

The juvenile court acted well within its discretion in concluding that this case, in which no one else was a candidate for the privilege and responsibility of fathering this little boy, was not *an appropriate action* in which to find that the section 7611(d) presumption of fatherhood had been rebutted.

### FACTUAL AND PROCEDURAL BACKGROUND

The Alameda County Social Services Agency (the Agency) filed a juvenile dependency petition alleging that Nicholas H. was taken into custody pursuant to section 300, subdivision (b) of the Welfare and Institutions Code because his parents had failed to adequately supervise and protect him. Our recitation of the events constituting the factual basis for the petition is taken from the opinion of the Court of Appeal.

"On January 7, 2000, Thomas obtained temporary custody of Nicholas after filing a petition to establish a parental relationship with Nicholas in Alameda County Superior Court. In his January 5 petition, Thomas alleged the following facts: Thomas lived with Kimberly from May 1995 until December 1997 and from January 1999 until September 1999. Thomas and Kimberly are the parents of Nicholas who was born on August 10, 1995. Kimberly cannot keep a job, is often homeless, and has been in trouble with the law. Since their separation, Kimberly has prevented Thomas from having contact with his son. Most recently, the two fought over Nicholas during a holiday visit in December 1999 at the home of Thomas's mother, Carol, who lives in Lakewood, California. Kimberly attacked and bit Thomas. The police were called and Kimberly was arrested for felony assault. While Kimberly was still in jail, Thomas returned to his home in Alameda County and brought Nicholas with him.

"In his petition, Thomas asserted that family and friends of both Thomas and Kimberly supported his request for custody of Nicholas and have

acknowledged that Kimberly cannot adequately care or provide for Nicholas. Thomas also submitted letters of support from his friends and family. In one letter, Thomas's sister explained why Thomas should be considered Nicholas's real father even though he is not the boy's biological father.

"On February 3, 2000, Kimberly appeared at the Fremont Police Department and reported that Thomas took Nicholas without her permission. Kimberly told police she was in jail in Los Angeles when Thomas took Nicholas from the home of Thomas's mother to live with him in Union City. Kimberly gave police a copy of a Los Angeles County protective order dated September 3, 1998, restraining Thomas from having contact with Kimberly or Nicholas until March 2, 2001. Police further determined that Thomas had an outstanding misdemeanor assault warrant. They also discovered that Thomas had obtained the January 7 temporary custody order.

"Kimberly gave police the following information: Thomas was not the biological father of Nicholas. The two met when Kimberly was pregnant and both had wanted Thomas to be Nicholas's father. Thomas was thus named as the father on Nicholas's birth certificate. Kimberly and Thomas never married but they lived together with Nicholas. After a few years, the couple had problems, which led to domestic violence. Thomas was arrested for battering Kimberly and the restraining order was issued. The couple tried living together again despite the restraining order but they could not get along and often fought about how to raise Nicholas. Kimberly told police about the holiday visit at Thomas's mother's home which resulted in her arrest for battery and Thomas's arrest for outstanding warrants. Kimberly reported that, after Thomas was released, he took Nicholas to Union City without Kimberly's knowledge or permission.

"Police went with Kimberly to Thomas's work. Thomas told the officer his version of the holiday visit and that he had obtained temporary custody of Nicholas. He complained that Kimberly was an unfit mother, that she took drugs and that she was homeless. Thomas told the police that the outstanding warrant against him was for failing to complete an anger management class after he was arrested for battering Kimberly in 1998. Police arrested Thomas on the outstanding warrant. Thomas refused to give permission to release Nicholas to Kimberly. The police therefore placed Nicholas in the custody of the Agency."[2]

---

[2]As this recitation reveals, Thomas was not a perfect candidate for fatherhood, if any such there be. However, by underlining Thomas's imperfections, we hope to forestall any misunderstanding of our holding. The strength of the presumption under section 7611(d) does *not*

A long series of hearings—detention, jurisdictional, dispositional, and six-month review—ensued.[3] For the purpose of framing the narrow issue we are considering, the evidence, viewed in the light most favorable to the findings and orders of the juvenile court, may be summarized as follows.

When Kimberly was pregnant with Nicholas, she moved in with Thomas. Thomas is not Nicholas's biological father, as he admits, but both Kimberly and Thomas wanted Thomas to act as a father to Nicholas, so Thomas participated in Nicholas's birth, was listed on Nicholas's birth certificate as his father, and provided a home for Kimberly and Nicholas for several years.

Thomas has been the constant in Nicholas's life. As the Court of Appeal observed, in concluding the evidence "more than satisfied the requirements of section 7611(d)," Thomas has lived with Nicholas for long periods of time, he has provided Nicholas with significant financial support over the years, and he has consistently referred to and treated Nicholas as his son. "In addition, there is undisputed evidence that Nicholas has a strong emotional bond with Thomas and that Thomas is the only father Nicholas has ever know[n]."

Kimberly, on the other hand, has been a frail reed for Nicholas to lean upon. The investigation report prepared by a family services counselor stated that "information from friends and relatives of the family supported Thomas's allegations of Kimberly's drug use, transiency, lack of gainful employment and violence towards others." The juvenile court's finding that Nicholas had to be removed from her custody was based on the following grounds: "One, [Kimberly] continues to lead an unstable lifestyle, without housing or means of support of her own. . . . [¶] Number two, Nicholas has continually stated he does not wish to reside with his mother because she is mean to him; she hits and slaps him; and she smokes weed. [¶] Three, and most importantly to me as I have observed [Kimberly's] demeanor throughout this case, particularly during her testimony, I have grown increasingly concerned about [her] mental and emotional health. . . ."

Jason S., Kimberly claims, is Nicholas's biological father. However, Jason has not come forward to assert any parental rights he may have, and because the Agency has been unable to obtain enough information from Kimberly to locate Jason, his paternity could not be established.

On this record, the juvenile court found that the presumption under section 7611(d) that Thomas was Nicholas's natural father had not been rebutted.

depend on the presumed father's being a paragon. What is dispositive is the presumed father's relationship with, and responsibility for, the child.

[3]We delineated the procedure in dependency proceedings in *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 247-250 [19 Cal.Rptr.2d 698, 851 P.2d 1307].

The court expressly rejected the contention that Thomas's admission that he is not Nicholas's biological father necessarily rebutted the presumption. "If I were to agree with County Counsel that [Thomas's] admission that he is not Nicholas's biological father rebuts the presumption, then what we would be doing is leaving Nicholas fatherless."

The Court of Appeal summarized the juvenile court's dispositional findings and orders: "With respect to disposition, the court found there was clear and convincing evidence that Nicholas must be removed from Kimberly's physical custody. However, the court rejected the Agency's recommendation that Nicholas be removed from Thomas's care. The court acknowledged that Thomas had problems but concluded that Thomas had been caring toward and responsible for Nicholas. The court was also swayed by Nicholas's clear expression of his love for Thomas and his preference to live with him. Thus the court concluded that Nicholas's care and custody would be committed to the Agency but that his placement should continue in Thomas's home. The court ruled that both Kimberly and Thomas were entitled to [family reunification] services and both were ordered to participate in psychological evaluations. The court also vacated its prior order that Jason S. submit to a paternity test. Finally, the court ruled that Thomas could relocate to Southern California with Nicholas and return to the county for appointments and visits with Kimberly."

## DISCUSSION

The Court of Appeal concluded that Thomas qualified as Nicholas's presumed father under section 7611(d), but that, under section 7612(a), his admission that he is not Nicholas's biological father necessarily rebutted that presumption.

The Court of Appeal reached the latter conclusion through the following analysis: "[T]he section 7611 presumption that a man is the 'natural father' of a child can be rebutted by 'clear and convincing evidence.' (§ 7612.) To properly evaluate the juvenile court's ruling that the section 7611 presumption was not rebutted in this case, we focus on the two statutory terms we have just quoted from the relevant statutes." The Court of Appeal satisfied itself through an examination of relevant Family Code provisions that "the Legislature has used the term 'natural' to mean 'biological,'" and, through a review of family law decisions, that "courts construing sections 7611 and 7612 have assumed that natural means biological." Clear and convincing proof demands *a high probability*, the Court of Appeal observed. Accordingly, "when read in conjunction with section 7611," the Court of Appeal concluded, "section 7612 means that the presumption that a man is a child's

natural father is rebutted by evidence establishing a high probability that the man is not the child's natural, biological father." Evidence establishing a high probability that Thomas is not Nicholas's biological father was adduced in this case, namely, the testimony of both Kimberly and Thomas under oath that Thomas is not Nicholas's biological father. Therefore, even though its decision would have the effect of rendering Nicholas fatherless, the Court of Appeal felt it was "not free to ignore the statute, which expressly states that the section 7611(d) presumption *is* rebutted by clear and convincing evidence that the presumed father is not the child's natural father." (Italics added.)

■ In its misreading of section 7612(a)—"that the section 7611(d) presumption *is* rebutted by clear and convincing evidence that the presumed father is not the child's natural father" (italics added)—the Court of Appeal appears to have conflated two of the three subdivisions of section 7612. Subdivision (a) provides that "a presumption under Section 7611 is a rebuttable presumption affecting the burden of proof and *may* be rebutted *in an appropriate action* only by clear and convincing evidence." (Italics added.) Subdivision (c), on the other hand, provides that "[t]he presumption under Section 7611 *is* rebutted by a judgment establishing paternity of the child by another man." (Italics added.) No judgment establishing the paternity of another man has been entered here. Kimberly asserts Jason is Nicholas's biological father, but Jason has not come forward to affirm that claim and, indeed, has not even been located. ■ "A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an 'alleged' father. [Citation.]" (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15 [24 Cal.Rptr.2d 751, 862 P.2d 751] (*Zacharia D.*).)

■ Our conclusion—that a man does not lose his status as a presumed father by admitting he is not the biological father—is also supported by subdivision (b) of section 7612. Subdivision (b) provides: "If two or more presumptions arise under section 7611 which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls." As a matter of statutory construction, if the Legislature had intended that a man who is not a biological father cannot be a presumed father under section 7611, it would not have provided for such weighing, for among two competing claims for presumed father status under section 7611, there can be only one biological father.

Moreover, for persons who are presumed fathers under section 7611 by virtue of a voluntary declaration of paternity pursuant to section 7573, the Legislature permits but does not require that blood test evidence may be

considered to extinguish such a person's presumed paternity. (§ 7575, subd. (b)(1).) It is unlikely the Legislature would—without explicitly so stating—adopt a contrary rule that blood test evidence (or an admission) must defeat the claim of a person who claims presumed father status under section 7611(d).

The Court of Appeal cited two of our cases in support of its statement that "courts construing sections 7611 and 7612 have assumed that natural means biological. (See, e.g., *In re Zacharia D.*, *supra*, 6 Cal.4th at p. 449, fn. 15 ['[a] biological or natural father is one whose biological paternity has been established . . . .']; *Adoption of Kelsey S.* [(1992)] 1 Cal.4th [816,] 823, fn. 3 [4 Cal.Rptr.2d 615, 823 P.2d 1216] [defining the statutory term 'natural father' to mean a biological father who does not qualify as a presumed father] . . . .)"

The Court of Appeal read too much into the passages it selected from *Zacharia D.* and *Adoption of Kelsey S.* We did not in those cases address the question we confront here, but we did observe in passing that "it is possible for a man to achieve presumed father status, with its attendant rights and duties, without being the biological father" (*Zacharia D.*, *supra*, 6 Cal.4th at p. 450, fn. 18), and that "even if paternity is denied and legally disproved, a man may be deemed, under some circumstances, to be a 'presumed father' " (*Adoption of Kelsey S.*, *supra*, 1 Cal.4th at p. 823, fn. 3).

Moreover, several Court of Appeal cases have held that a presumption arising under section 7611(d) is *not*, under section 7612(a), necessarily rebutted by clear and convincing evidence that the presumed father is not the biological father of the child. Indeed, two Courts of Appeal have held that, in the words of one of them, "biological paternity by a competing presumptive father does not necessarily defeat a nonbiological father's presumption of paternity." (*In re Kiana A.* (2001) 93 Cal.App.4th 1109, 1118 [113 Cal.Rptr.2d 669] (*Kiana A.*).)

In *Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108 [39 Cal.Rptr.2d 535] (*Steven W.*), two men qualified as presumed fathers of Michael. Matthew qualified under subdivision (a)(1) of Civil Code former section 7004 (now Fam. Code, § 7611) because he was married to Michael's mother, Julie, when Michael was born. Matthew also qualified under Evidence Code former section 895.5 (now Fam. Code, § 7555) on the basis of blood test evidence. (*Steven W.*, at p. 1116, fn. 4.) Steven qualified under Civil Code former section 7004, subdivision (a)(4) (now Fam. Code, § 7611(d)) because he had received Michael into his home and held him out as his child. (*Steven W.*, at pp. 1115-1116 & fn. 3.) The trial court found Steven's presumption of

paternity controlling on the ground he had the " 'more prolonged, intensive and continuing relationship' " with Michael. (*Id.* at p. 1113.)

The Court of Appeal affirmed. "Former section 7004, subdivision (b) of the Civil Code provided that when presumptions conflict, 'the presumption which on the facts is founded on the weightier consideration of policy and logic controls.' The paternity presumptions are driven by state interest in preserving the integrity of the family and legitimate concern for the welfare of the child. The state has an ' "interest in preserving and protecting the developed parent-child . . . relationships which give young children social and emotional strength and stability." ' (*Susan H. v. Jack S.* (1994) 30 Cal.App.4th 1435, 1442 [37 Cal.Rptr.2d 120], citing *Michelle W. v. Ronald W.* (1985) 39 Cal.3d 354, 363 [216 Cal.Rptr. 748, 703 P.2d 88].) The courts have repeatedly held, in applying paternity presumptions, that the extant father-child relationship is to be preserved at the cost of biological ties. (*Michelle W. v. Ronald W.*, *supra*, at p. 363 [alleged biological father's abstract interest in establishing paternity not as weighty as the state's interest in familial stability and the welfare of the child]; *Comino v. Kelley* (1994) 25 Cal.App.4th 678, 684 [30 Cal.Rptr.2d 728] [court refused to apply conclusive presumption of Evid. Code, § 621 to deny the child the only father she had ever known].)

" ' " "[I]n the case of an older child [over two years of age] the familial relationship between the child and the man purporting to be the child's father is considerably more palpable than the biological relationship of actual paternity. A man who has lived with a child, treating it as his son or daughter, has developed a relationship with the child that should not be lightly dissolved . . . . This social relationship is much more important, to the child at least, than a biological relationship of actual paternity. . . .' " ' " ' (*Susan H. v. Jack S.*, *supra*, 30 Cal.App.4th at p. 1443, quoting *Estate of Cornelious* (1984) 35 Cal.3d 461, 465-466 [198 Cal.Rptr. 543, 674 P.2d 245].)

"Here, despite Matthew's biological ties to Michael, he acquiesced in Steven's assumption of the role of father in Michael's life. He never participated in any decisions regarding Michael's health or education but deferred to Steven. Steven continued to share custody of Michael even after his relationship with Julie ended.

"The record establishes that Steven developed the enduring father-child relationship with Michael. He openly held Michael out as his son to his family, to the school, to the world. He signed the birth certificate, gave Michael his surname, and participated in all aspects of his emotional and

financial support for the first four years of the child's life. Given the strong social policy in favor of preserving the ongoing father and child relationship, the trial court did not err in finding that the conflict between the presumptions weighed in favor of Steven." (*Steven W., supra*, 33 Cal.App.4th at pp. 1116-1117.)

In a very recent case, *Kiana A., supra*, 93 Cal.App.4th 1109, two men qualified as presumed fathers of 13-year-old Kiana A. Mario A. qualified under subdivision (c)(1) of section 7611 because, after Kiana A.'s birth, he married her mother and his name appeared on her birth certificate. Kevin W. qualified under section 7611(d) because he received Kiana A. into his home and held her out as his child. The juvenile court weighed these conflicting presumptions against one another pursuant to section 7612, subdivision (b), which provides: "If two or more presumptions arise under Section 7611 which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls." The evidence clearly supported the juvenile court's conclusion, the Court of Appeal held, that Kevin W.'s presumption was entitled to greater weight than Mario A.'s. "Mario A. was incarcerated at about the time of Kiana A.'s birth, has remained incarcerated continuously thereafter and was in prison for the entirety of his marriage to mother. Kiana A. is unaware of ever having seen Mario A. prior to his appearance in these proceedings and declared she does not acknowledge him as her father. [¶] Kevin W., on the other hand, has taken Kiana A. into his home, has cared for her needs, has held her out as his child and signed a declaration of paternity in juvenile court . . . ." (*Kiana A.*, at pp. 1117-1118.)

Mario A. contended the juvenile court should have granted requests for genetic testing before it commenced the weighing process. The Court of Appeal rejected the contention on the ground Mario A. failed to seek genetic testing in the juvenile court. Moreover, the court went on to say, "Even if Mario A. could raise the issue at this juncture, it would fail because biological paternity by a competing presumptive father does not necessarily defeat a nonbiological father's presumption of paternity. Indeed, section 7612, subdivision (a), states a presumption of paternity 'may be rebutted in an appropriate action only by clear and convincing evidence.' . . . Thus, although the results of genetic testing constitute clear and convincing evidence, it does not follow that such evidence will rebut the presumption in every case. Rather, the statute seeks to protect presumptions of paternity, once they have arisen, from being set aside except upon clear and convincing evidence and only in an appropriate case." (*Kiana A., supra*, 93 Cal.App.4th at pp. 1118-1119, italics omitted.)

In an even more recent case, *In re Jerry P.* (2002) 95 Cal.App.4th 793 [116 Cal.Rptr.2d 123] (review granted May 1, 2002, S104863, opn. ordered

published June 6, 2002), the juvenile court found that J. R. did not qualify under section 7611(d) as the presumed father of Jerry because, although J. R. had held Jerry out as his child, he had never received Jerry into his home. (*Jerry P.*, at p. 797.) The reason that J. R. had not received Jerry into his home was that, through no fault of his own, J. R. had been prevented from doing so by Jerry's "mother, the [Department of Children and Family Services], the hospital or a combination of all three." (*Id.* at p. 811.) The juvenile court did not address the additional contention that J.R. could not be Jerry's presumed father because DNA tests showed he was not the child's biological father. (*Id.* at p. 797.)

The Court of Appeal held as follows: "We hold presumed fatherhood status, for purposes of dependency proceedings, is not necessarily negated by evidence the presumed father is not the biological father. We further hold *Adoption of Kelsey S.*[, *supra*, 1 Cal.4th 816] applies to dependency proceedings and therefore Family Code section 7611 and the related dependency scheme violate the constitutional rights of a man seeking presumed father status to the extent they permit a mother or third person to unilaterally deny him that status by preventing him from receiving the child into his home. Finally, we hold the constitutional protection afforded biological fathers under *Adoption of Kelsey S.* extends to men who are not biological fathers but who meet the other criteria for presumed father status under the *Adoption of Kelsey S.* decision." (*In re Jerry P.*, *supra*, 95 Cal.App.4th at p. 797, fn. omitted, review granted May 1, 2002, S104863, opn. ordered published June 6, 2002.)

In the present case, the Court of Appeal disagreed with *Steven W.*, *supra*, 33 Cal.App.4th 1108, and was convinced, instead, by *In re Olivia H.* (1987) 196 Cal.App.3d 325 [241 Cal.Rptr. 792] (*Olivia H.*). (*Kiana A.*, *supra*, 93 Cal.App.4th 1109, *In re Jerry P.*, *supra*, 95 Cal.App.4th 793, and *In re Raphael P.* (2002) 97 Cal.App.4th 716 [118 Cal.Rptr.2d 610] (*Raphael P.*), were decided after the present case, so the Court of Appeal did not have the benefit of those decisions.)

In *Olivia H.*, *supra*, 196 Cal.App.3d 325, the juvenile court denied presumptive parental status (Civ. Code, former § 7004; now Fam. Code, § 7611(d)) to Gregory P., despite his claim that he had signed Olivia H.'s birth certificate, thereby acknowledging the child as his own, and had been willing to take her into his home. The Court of Appeal affirmed. The juvenile court had found, on the basis of court-ordered blood tests, that Gregory was not Olivia's biological father. This finding, the Court of Appeal held, brought into play Civil Code former section 7004, subdivision (b) (now Fam. Code, § 7612, subd. (c)). "In this instance, the juvenile court ordered

blood tests taken on the issue of paternity, received and evaluated the laboratory reports and found that there was conclusive evidence that defendant was not Olivia's biological father. [Citation.] Under such circumstances, defendant was precluded from establishing presumptive parenthood under Civil Code section 7004. Such being the case, subdivision (b) of that statute was clearly controlling: 'The presumption [that a man is the natural father of a child] is rebutted by a court decree establishing paternity of the child by another man.' " (*Olivia H.*, at p. 330.)

The statutory provision upon which the *Olivia H.* court relied did not support its conclusion. As the *Kiana A.* court pointed out, "there was no court decree [in *Olivia H.*] establishing [the] paternity [of] another man, only a blood test showing Gregory P. was not the biological father." (*Kiana A.*, *supra*, 93 Cal.App.4th at p. 1119.) The *Jerry P.* court agreed with the *Kiana A.* court that a finding that a man is not the biological father of a child is not equivalent to a judgment establishing paternity of the child by another man. "In our view, section 7612, subdivision (c) contemplates a situation in which a man of flesh and blood, as opposed to a mere hypothetical man, is put forward as the father of the child. Otherwise, a child could be precluded from having a loving, nurturing relationship with a committed father by a man the child may never even have met, who may be totally uninterested in the child and who cannot obtain presumed father status in his own right. We do not believe the Legislature intended to create such a dog-in-the-manger rule." (*In re Jerry P.*, *supra*, 95 Cal.App.4th at p. 804, review granted May 1, 2002, S104863, opn. ordered published June 6, 2002.)

In a still more recent case, *Raphael P.*, *supra*, 97 Cal.App.4th 716, the putative father contended he was entitled to presumed father status on the ground he had filed a voluntary declaration of paternity (§ 7570 et seq.) and on the ground he had received the child into his home and had openly held him out as his natural child (§ 7611(d)). The trial court rejected the former contention because it found no evidence that a voluntary declaration of paternity had in fact been filed with the required agency. (*Raphael P.*, at p. 723.) With regard to the presumption under section 7611(d), the trial court, without deciding whether the facts supported application of the presumption, concluded that blood test evidence demonstrating that the putative father was not the biological father of the child "precluded [the putative father] from establishing the presumption of paternity or rebutted that presumption." (*Raphael P.*, at p. 724.)

The section 7611(d) question presented by the case, the Court of Appeal in *Raphael P.* stated, was "whether biological proof of nonpaternity necessarily precludes presumed father status." (*Raphael P.*, *supra*, 97 Cal.App.4th at p. 724.)

"Sections 7540 and 7541," the *Raphael P.* court noted, "provide that even the otherwise conclusive marital presumption must give way to biological evidence: 'Notwithstanding Section 7540, if the court finds that the conclusions of all the experts, as disclosed by the evidence based on blood tests performed pursuant to Chapter 2 (commencing with Section 7550), are that the husband is not the father of the child, the question of paternity of the husband *shall be resolved accordingly.*' (§ 7541, subd. (a), italics added.) Section 7551 authorizes courts to order genetic testing of the mother, child and alleged father in civil actions or proceedings 'in which paternity is a relevant fact.' Section 7554, subdivision (a), [like section 7541] directs that '[i]f the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly.' " (*Raphael P., supra,* 97 Cal.App.4th at p. 734.)

The *Raphael P.* court acknowledged that, "at first glance [*Steven W., Kiana A.,* and *Jerry P.*] appear inconsistent with the directive of section 7754 that paternity determinations be made in accordance with blood test evidence." (*Raphael P., supra,* 97 Cal.App.4th at p. 734.) However, the *Raphael P.* court was "not convinced that the statute requires this result in all circumstances." (*Ibid.*)

"The specific language of section 7554 is illuminating. Section 7554 requires the court to resolve a question of paternity in accordance with genetic tests when such tests show that the 'alleged father' is not the father of the child. Similarly, section 7551 authorizes the trial court to order genetic testing for the mother, child and 'alleged father.' An 'alleged father' is '[a] man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status . . . .' (*In re Zacharia D., supra,* 6 Cal.4th at p. 449, fn. 15; see *In re Shereece B.* (1991) 231 Cal.App.3d 613, 620-621 [282 Cal.Rptr. 430].) Notably, sections 7551 and 7554 do *not* refer to genetic testing of presumed fathers. Accordingly, in our view, these statutes do not authorize courts to order genetic testing of a man who meets the statutory test for presumed fatherhood. It follows that if appellant met that test, the court should not have ordered him to undergo genetic testing, much less [have] allow[ed] the evidence of biological nonpaternity to rebut appellant's presumed father status.

"Additionally, section 7551 authorizes the court to order genetic testing in 'a civil action or proceeding in which paternity is a relevant fact.' In the present case, prior to the court's order and results of the blood tests, no one had suggested appellant was not Raphael's father and no other man claimed

that role. In such a situation, where there is a man claiming presumed father status and no indication of another man asserting paternity, we question whether paternity can rightly be considered a 'relevant fact.' " (*Raphael P.*, *supra*, 97 Cal.App.4th at pp. 734-735, fn. omitted.)

## CONCLUSION

To review: Section 7612(a) provides that "a presumption under Section 7611 [that a man is the natural father of a child] is a rebuttable presumption affecting the burden of proof *and may be rebutted in an appropriate action* only by clear and convincing evidence." (Italics added.) When it used the limiting phrase *an appropriate action*, the Legislature was unlikely to have had in mind an action like this—an action in which no other man claims parental rights to the child, an action in which rebuttal of the section 7611(d) presumption will render the child fatherless. Rather, we believe the Legislature had in mind an action in which another candidate is vying for parental rights and seeks to rebut a section 7611(d) presumption in order to perfect his claim, or in which a court decides that the legal rights and obligations of parenthood should devolve upon an unwilling candidate. We disapprove of *In re Olivia H., supra*, 196 Cal.App.3d 325, insofar as it conflicts with the views expressed herein.

In this case it is not necessary to reach, and we do not reach, the question addressed by the courts in *Steven W., supra*, 33 Cal.App.4th 1108, and *Kiana A., supra*, 93 Cal.App.4th 1109, namely, whether, under section 7612, subdivision (b), biological paternity by a competing presumptive father necessarily defeats a nonbiological father's presumption of paternity. It is also unnecessary to reach the question addressed by the court in *In re Jerry P., supra*, 95 Cal.Appl.4th 793 (review granted May 1, 2002, S104863, opn. ordered published June 6, 2002), namely, what constitutional rights are enjoyed by a man who is not a child's biological father but who is seeking to receive a child into his home and to achieve presumed father status.

The judgment of the Court of Appeal is reversed and the matter remanded for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

Appellant's petition for a rehearing was denied July 17, 2002, and the opinion was modified to real as printed above. Brown, J., did not participate therein.