7 Cal.Rptr.3d 755 (2003)
114 Cal.App.4th 771
In re A.A., A Person Coming Under the Juvenile Court Law.
Los Angeles County Department of Family and Children's Services, Plaintiff and Appellant,
v.
S.A. et al., Defendant and Appellant.
Nos. B163195, B164378.
Court of Appeal, Second District, Division Three.
December 22, 2003.
Review Denied April 21, 2004.
*757 Lloyd W. Pellman, County Counsel and Lois D. Timnick, Deputy County Counsel for Plaintiff and Appellant.
Andrea R. St. Julian, San Diego, under appointment by the Court of Appeal, for Appellant S.A.
Mary E. Handy, under appointment by the Court of Appeal, for Appellant R.B.
Steven D. Schatz, Santa Ana, under appointment by the Court of Appeal, for Appellant Minor Child.
Kimberly Knill, Laguna Beach, under appointment by the Court of Appeal, for Respondent, H.O.
*756 CROSKEY, J.
These are several appeals from a disposition order in a juvenile dependency case. (Welf. & Inst.Code, § 300 et seq.) The order includes a finding of paternity and presumed father status in favor of the respondent. The appellants are (1) a dependent minor child, (2) the minor's mother, (3) the person denied presumed father status and instead given de facto parent status, and (4) the local government agency responsible for dependent children.[1] All four appellants contend the trial court erred when it denied presumed father status to the man granted de facto parent status. The minor's mother raises a second issue  whether the court erred when it determined that the respondent qualifies for presumed father status.[2]
Our review of the facts of this case and the relevant law convinces us that (1) respondent does not qualify for presumed father status, and (2) the appellant who was designated a de facto parent does qualify as a presumed father. We also find that the trial court erred when it construed one of the statutes governing presumed father status. We therefore reverse the disposition order and remand the case for further proceedings consistent with the views expressed herein.

BACKGROUND OF THE CASE
The minor child at issue in this appeal is appellant A.A. ("the minor"). She was born in early 1997. Her mother is S.A. ("Mother"). R.B. is the appellant claiming he is entitled to presumed father status rather than de facto parent status ("R.B."). The local government agency is the Los Angeles County Department of Children and Family Services ("the Department"). Respondent is H. O., the man whom the dependency court determined is the minor's biological and presumed father ("respondent").
The first dependency petition in this case was filed on April 4, 2002. It addresses the minor and Mother's two other children, R. and E. The petition listed appellant R.B. as the father of both the minor and R, but did not designate him as a presumed father or a biological father.
At the detention hearing, the court found a prima facie case for detaining the three children and finding they are persons *758 described by section 300 of the Welfare and Institutions Code. On May 1, 2002, the court released the three children to Mother and J.H., the minor's step-father, and the Department dismissed its petition without prejudice. This was done pursuant to a mediation agreement, and a Welfare and Institutions Code section 301 contract for informal Department supervision of the family, under which the Department would provide voluntary family maintenance services. A completion date of October 28, 2002 was set, at which time child welfare services would be terminated.
When this arrangement for informal Department supervision proved unsuccessful within two months if its initiation, the Department filed a second dependency petition which restated the allegations made in the original petition. A detention hearing was held on June 27, 2002, and once again the court found prima facie evidence that the children are persons described by Welfare and Institutions Code section 300 and removal was necessary. All three children were released to appellant R.B., with monitored visits with Mother and the step-father. Family maintenance services were ordered for R.B., and family reunification services for Mother and the stepfather.
By the time of the August 1 pretrial resolution conference, respondent had contacted the Department and asserted that he is the minor's father. The court addressed the subject of presumed father status for each child individually. Finding no objection, the court made two findings under Family Code section 7611  that appellant R.B. is the presumed father of R, and that step-father J.H. is the presumed father of E. Regarding the minor, the court observed that both appellant R.B and Mother indicated on their paternity questionnaires that R.B. held the minor out as his child and accepted her into his home. However, the court indicated it would not make a paternity finding about the minor until HLA testing had been done on her, and on appellant R.B., respondent, and Mother.
At subsequent hearings, the court dismissed most of the allegations in the Department's second dependency petition, adjudicated the remainder to be true, found that R. and E. are persons described by subdivision (b) of section 300, and declared them dependents of the court. It placed them outside of Mother's care and with their respective presumed fathers, ordering family maintenance services for the fathers, and family reunification services for Mother. The minor remained released to appellant R.B., and her case was put over for disposition and resolution of her presumed father issue.
On November 25, 2002, the court indicated the results of the HLA tests show that respondent is the minor's biological father. While the attorneys for R.B., Mother, and the minor asserted that R.B. should be found to have presumed father status, the court disagreed, finding that respondent is the minor's presumed father under Family Code section 7611.
The court proceeded to disposition of the minor, declaring her to be a dependent child of the court, and placing custody of her with the Department "for suitable placement with [appellant R.B.]," whom the court referred to as an alleged father, and to whom it granted de facto status and standing.[3] The court ordered reunification *759 services for Mother and respondent, and family maintenance services for R.B. "even though someone else is a presumed father."
Thereafter, Mother, the minor, the Department, and R.B. filed their appeals.

ISSUES ON APPEAL
The issues in this appeal address the matter of statutory presumed father status. Did the dependency court err in denying presumed father status to appellant R.B.? Did the court err in finding that respondent is the minor's presumed father?

DISCUSSION

1. Relevant Terminology in Dependency Cases

In dependency proceedings, "fathers" are divided into four categories  natural, presumed, alleged, and de facto. (In re Jerry P. (2002) 95 Cal.App.4th 793, 801, 116 Cal.Rptr.2d 123.) A natural father is one who has been established as a child's biological father. (Id. at p. 801, 116 Cal.Rptr.2d 123.) Use of the term "natural father" means that while the man's biological paternity has been established, he "has not achieved presumed father status as defined in [former] Civil Code section 7004."[4] (In re Zacharia D. (1993) 6 Cal.4th 435, 449, fn. 15, 24 Cal.Rptr.2d 751, 862 P.2d 751.)
"Presumed fatherhood, for purposes of dependency proceedings, denotes one who `promptly comes forward and demonstrates a full commitment to ... paternal responsibilities  emotional, financial, and otherwise[.]'" (In re Jerry P., supra, 95 Cal.App.4th at pp. 801-802, 116 Cal.Rptr.2d 123.) A natural father can be a presumed father, but is not necessarily one; and a presumed father can be a natural father, but is not necessarily one. (Id. at pp. 801, 116 Cal.Rptr.2d 123.)
An alleged father may be the father of a dependent child. However, he has not yet been established to be the child's natural or presumed father. (In re Jerry P., supra, 95 Cal.App.4th at p. 801, 116 Cal.Rptr.2d 123.) A de facto father is someone such as a stepparent who has, on a day-to-day basis, assumed the role of a parent for a substantial period of time. (Id. at p. 801, 116 Cal.Rptr.2d 123; In re Crystal J. (2001) 92 Cal.App.4th 186, 190, 111 Cal.Rptr.2d 646; Cal. Rules of Court, rule 1401, (a)(8).) Use of the word "parent" in the dependency statutes does not include de facto parents. (In re Zacharia D., supra, 6 Cal.4th at p. 448, 24 Cal.Rptr.2d 751, 862 P.2d 751 [observing that de facto parents are not "parents" for purposes of reunification services].)

2. Relevant Statutory and Case Law Respecting Presumed Father Status in Dependency Cases

Presumed fathers are accorded greater rights than are mere natural fathers. (In re Zacharia D., supra, 6 Cal.4th at pp. 448-449, 24 Cal.Rptr.2d 751, 862 P.2d 751.) For example, section 361.5, subdivision (a) of the Welfare and Institutions Code provides that except in circumstances not relevant here, "whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians. Upon a finding and declaration *760 of paternity by the juvenile court or proof of a prior declaration of paternity by any court of competent jurisdiction, the juvenile court may order services for the child and the biological father, if the court determines that the services will benefit the child." (Italics added.)
In dependency cases, one means of obtaining a presumed father status is to meet the conditions set out in any of the four subdivisions of section 7611. They are: (a) the man and the child's natural mother are, or have been married to each other and the child was born during the marriage or within 300 days after the marriage is terminated or there is a judgment of separation, (b) before the child's birth, the man and the natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with the law, and the child is born within a certain period of time, (c) after the child's birth, the man and the natural mother have married or attempted to marry each other by a marriage solemnized in apparent compliance with law, and with his consent he is named on the child's birth certificate as the child's father, or he is obligated to support the child because of a written voluntary promise or a court order, or (d) the man receives the child into his home and openly holds the child out as his natural child. Subdivision (d) is the portion of section 7611 under which both appellant R.B. and the respondent assert they qualify for presumed father status for the minor.[5]
Subdivision (a) of section 7612 provides that a presumption arising under these subdivisions of section 7611 may be rebutted, in an appropriate action, by clear and convincing evidence. (§ 7612, subd. (a).) Use of the word "may" and the requirement of an appropriate action denote the state's preference to not remove children from homes where they have a strong emotional bond with a man who is not the child's biological father but who has met the statutory requirements for presumed father status. California recognizes that developed parent-child relationships that afford children social and emotional strength and stability can substitute for biological ties, and in such cases it may not be appropriate to find that the presumption of paternity has been rebutted. (In re Nicholas H. (2002) 28 Cal.4th 56, 62, 120 Cal.Rptr.2d 146, 46 P.3d 932 et seq.)[6]
In re Nicholas H. presented the question whether a man's section 7611, subdivision (d) presumed father status is necessarily rebutted, under subdivision (a) of section 7612, by his admission that he is not the child's biological father. The court held it is not. Rather, whether a particular dependency case is an appropriate action in which to find that such a presumption is rebutted under subdivision (a) of *761 section 7612 is a matter for the trial court's sound discretion. (In re Nicholas H., supra, 28 Cal.4th at pp. 58-59, 70, 120 Cal.Rptr.2d 146, 46 P.3d 932.) In that case, there was no other man who was claiming parental rights to the child, and the court said it was unlikely that the Legislature had in mind that type of situation when it used the phrase "in an appropriate action" in subdivision (a), since a finding that the appellant's section 7611 presumed father status had been rebutted by his admission of nonpaternity would render the child fatherless. The court said that instead, the Legislature was addressing "an action in which another candidate is vying for parental rights and seeks to rebut a section 7611(d) presumption in order to perfect his claim, or in which a court decides that the legal rights and obligations of parenthood should devolve upon an unwilling candidate." (Id. at p. 70, 120 Cal.Rptr.2d 146, 46 P.3d 932.).
Another aspect of section 7612 is its provision that when two or more presumptions arise under section 7611 and those presumptions conflict with each other, "the presumption which on the facts is founded on the weightier considerations of policy and logic controls." (§ 7612, subd. (b).) This Legislative directive to weigh considerations of policy and logic gives recognition to the fact that "[t]he paternity presumptions are driven by state interest in preserving the integrity of the family and legitimate concern for the welfare of the child." (Steven W. v. Matthew S. (1995) 33 Cal.App.4th 1108, 1116, 39 Cal.Rptr.2d 535, "Steven W.") The directive reflects California's preference for preserving an existing parent-child relationship that affords a child social and emotional strength and stability. (Ibid.)
In Steven W., two men, Steven and Matthew, had presumed father status of the same child. While blood tests established that Matthew was the child's biological father, the trial court determined Steven's presumption of paternity should prevail because he had developed "the enduring father-child relationship" with the child, and therefore the conflict between the presumptions weighed in his favor. (Steven W., supra, 33 Cal.App.4th at p. 1117, 39 Cal.Rptr.2d 535.) Likewise, in In re Kiana A. (2001) 93 Cal.App.4th 1109, 113 Cal.Rptr.2d 669, we said that if genetic testing had been performed in that case and had shown that one of the two presumed fathers was the biological father and the other was not, the latter would not necessarily lose his presumed father status. (Id. at pp. 1118-1119, 113 Cal.Rptr.2d 669.)
In In re Nicholas H., supra, 28 Cal.4th at p. 70, 120 Cal.Rptr.2d 146, 46 P.3d 932, the court said that because there was only one presumed father claiming parental rights in that case, it was not necessary for the court to decide the question addressed in Steven W. and Kiana A., namely, whether under subdivision (b) of section 7612, a presumed father's biological paternity of a child necessarily defeats a nonbiological father's presumed father status.[7] Because the court did not decide that issue, the holdings in Kiana A. and Steven W. are still viable. Since our review of the record convinces us that appellant R.B. is a presumed father under section 7611, we would apply those holdings to the instant case and send the case back to the trial court to have the court conduct a section 7612, subdivision (b) weighing process were it not for the fact that our review of the record also convinces us that the facts of this case do not support respondent's claim to presumed father status for the minor. Those conclusions are addressed next.

*762 3. Standard of Review

As noted above, the statutory provision under which both respondent and R.B. claim presumed father status for the minor is subdivision (d) of section 7611. To support their claim, each "had the burden of establishing by a preponderance of the evidence that there were present two elements necessary to invoke the presumption: reception [of the minor] into [his] home and openly and publicly acknowledging paternity." (In re Spencer W. (1996) 48 Cal.App.4th 1647, 1652, 56 Cal.Rptr.2d 524.) Section 7611 states that a man is presumed to be the natural father of a child if he meets those elements.
In considering appellants' challenge to the trial court's finding that R.B. is not a presumed father, and in considering Mother's challenge to the court's finding that respondent is a presumed father, we apply the substantial evidence test. In doing so, we are required to view the evidence in the light most favorable to those determinations. We draw all reasonable inferences, and resolve conflicts in the evidence, in favor of the trial court's findings, and we do not reweigh the evidence. (In re Spencer W., supra, 48 Cal.App.4th at p. 1650, 56 Cal.Rptr.2d 524.)

4. Analysis of Appellant R.B.'s Claim of Presumed Father Status

a. Factual Background of R.B.'s Claim

When Mother filled out a paternity questionnaire, she stated that R.B. is the father of the minor, and that he held himself out as the minor's father and accepted the minor into his home. Likewise, R.B. indicated on his own paternity questionnaire that he holds himself out as the father of the minor and accepts her into his home.
When the social worker interviewed R.B. for the April 4, 2002 detention hearing on the first dependency petition, R.B. indicated he had last seen the minor and his son R. on March 31 of that same year. He stated that while he will not give Mother money for the children, he buys them clothes (and keeps the receipts) and other things they need, and has told Mother to call him if the children need anything. He stated he always stays in touch with his children no matter where Mother lives. He was employed by his father in a painting business at that time.
R.B. told the social worker that after he ended his relationship with Mother, he visited with the minor and his son every other weekend, and on their birthdays and holidays. After he was incarcerated from 2000 to 2001, he visited the children at least once a month. He indicated that while he understood that respondent could be the minor's father, he (R.B.) has always thought of the minor as his daughter and he loves her as his own. In a declaration he filed with his motion for presumed father status, R.B. stated it is his wish to have custody of the minor and have her be a part of his family with his son, R. He disputed that respondent had ever provided for the minor child or been involved with her.
Mother told the social worker that when she informed R.B. that respondent did not want to have anything to do with the minor, R.B. treated the minor as if she were his own child. He takes the minor and his son, R., to his home for visits and buys them clothes, food, toys and other essentials.
Prior to respondent coming forward, all parties and the court referred to R.B. as the minor's father. At the June 27 detention hearing on the second petition, the three children were released to R.B. The minor's counsel indicated to the court that *763 the minor wished to stay with her brother, R., and with R.B.
In the Department's disposition report for the second petition, the social worker stated: "it is apparent that [R.B.] has cared for and provided for [the minor] since her birth and he continues to care for her needs. Additionally, [the minor] is residing with her brother, [R] with whom she is bonded." The social worker opined that "[i]t is not in [the minor's] best interest to remove her from [R.B.] whom she has known since birth and with whom she has a close relationship in order to place her with another alleged father whom she barely saw as a toddler, with whom she does not have a relationship and who apparently has not provided for her needs."

b. Analysis of R.B.'s Facts

The record is clear that the minor never actually lived with R.B. However, when a mother and father of a child are not inclined to live with each other, their child often lives with only one of the parents and visits the other. Here, there is evidence to support a finding that is what occurred between Mother, the minor, and R.B. Although the minor was not received into R.B.'s home to live with him on a full time basis, he was involved with the minor from the very beginning, with Mother's blessing. He took this interest in the minor even though he was not convinced she is his biological daughter. Thus, when his own son, R., came to visit him, so also did the minor child, whom the record shows was bonded with R. Additionally, R.B. provided financially for the minor's needs, buying her clothes, toys and food, and other essentials. It thus was quite natural for R.B. to step up to the plate and take the minor as well as his own son into his home when the children were removed from Mother's care. Both he and Mother indicated on their paternity questionnaires that he holds himself out as the minor's father, and he was referred to as the father of the minor during much of the time the case was pending in the trial court. The Department was of the opinion that the minor and R.B. have a close relationship, and the minor preferred to be placed with him even though she is aware that respondent is her father.
Thus, we conclude the evidence is not sufficient to support the trial court's determination that R.B. has not obtained presumed father status under subdivision (d) of section 7611. As a matter of law, he has met the elements of that statutory presumption. As next discussed, the same cannot be said for respondent.

5. Analysis of Respondent's Claim of Presumed Father Status

a. Factual Background of Respondent's Claim

At the August 1, 2002 preresolution conference, respondent's attorney represented to the court that respondent gave him the following chronology regarding respondent's contacts with the minor. Mother, the respondent and the minor lived together for one to three months in 1998, and respondent visited the minor every other weekend from when the minor was one year old until approximately May 2001 when respondent became involved with another woman, at which time Mother stopped letting respondent visit the minor, and respondent last saw the minor around March 2002. Respondent's mother has pictures of the minor in her wallet, and he is held out to be the minor's father.
The Department's report for the September 2002 mediation hearing contains respondent's statement that after November 2001 he did not see the minor any more because Mother made it difficult for him to visit with her because he had a *764 girlfriend. However, prior to that time, he saw the minor twice a month, although not in his home, and sometimes the minor visited his parents on the weekends. He stated that he and his parents bought the minor clothes, toys and food approximately two times a month, but he did not give Mother financial assistance for the minor. Respondent filled out a paternity questionnaire in which he stated that he held himself out as the minor's father and accepted her into his home.
In papers submitted by respondent's attorney to the court in October 2002, it was represented that respondent "visited the minor on a fairly regular basis, occurring for the most part at the maternal grandmother's residence. This type and frequency of visitation continued through 1997." This representation of events was made in points and authorities, not in a declaration signed by respondent.
At the mediation hearing, Mother stated that respondent visited the minor when she was one or two years old but he denied that she was his child and he always stated he wanted a paternity test, and that is why Mother "didn't put his last name." (Apparently Mother meant that is why she did not give respondent's last name to the minor. The minor bears Mother's last name.) Mother stated respondent's own mother did come and visit the minor but when Mother invited respondent to come and visit the child, he declined. The Department reported that Mother made similar representations to the social worker regarding respondent's denial of paternity, and she stated he visited the minor in Mother's home when she was two years old and then stopped visiting, and when Mother asked respondent's own mother why he had stopped visiting the minor, his mother stated she did not know where he was. Additionally, Mother told the social worker that the minor visited respondent's parents at their home and on one such visit in 2001 the minor saw respondent and he hit her because she called him by his first name instead of "daddy." After that, the minor refused to go to the home of respondent's parents and so respondent's parents would drive to Mother's home to see the minor. Mother indicated that respondent had two visits with the minor at his parents' home between 2000 and 2001, and he not come to see the minor at Mother's home. According to Mother, respondent never provided for the minor in any way.
When the minor was interviewed by the children's social worker during the pendency of the initial dependency petition, she stated respondent is her father but he never comes to visit her, and the last time she saw him was when she was one year old. At the November 25, 2002 disposition hearing, respondent's attorney represented to the court that his client had recently reestablished his relationship with the minor, had seen her four times since the prior court hearing, was telephoning her every other evening, and the minor enjoys the visits and refers to respondent as "daddy" and responds to him as such.

b. Analysis of Respondent's Claim

Mother contends the record is insufficient to support the trial court's determination that respondent met the section 7611, subdivision (d) requirements for presumed father status. Mother is correct. The evidence does not support a finding that respondent is a statutorily presumed father.[8]
*765 There is no evidence the minor was received into respondent's home. The record shows merely that respondent represented to his attorney, who then represented to the court, that Mother, respondent and the minor lived together in somebody's home for one to three months in 1998. Besides being second-hand evidence, this period of time is exceedingly small.
Nor is there evidence that the minor was received into respondent's home on a consistent visitation basis. While there was a significant difference in the information given to the court by Mother and by respondent regarding the span of time during which respondent visited with the minor, even resolving that conflict in favor of respondent's representation that he visited the minor "on a fairly regular basis" (whatever that means) in 1997 after she was born in April of that year, and then visited with her every other weekend from 1998 to May 2001 and last saw her around March 2002,[9] the visits were in other people's homes, not in respondent's home. Absent any other reasonable explanation for this (to which we are not made privy), such visitation can be seen as a matter of convenience for respondent. (In re Spencer W., supra, 48 Cal.App.4th at p. 1653, 56 Cal.Rptr.2d 524.) By visiting the minor at the maternal grandmother's home and at his parents' home, respondent could avoid the constant parental-type tasks that come with having the child in his own home  such as feeding and cleaning up after the minor, changing her clothing, bathing her, seeing to her naps, putting her to bed, taking her for outings, playing games with her, disciplining her, and otherwise focusing on the child. Indeed, there is no indication of what he did with the minor during his visits. Also lacking is evidence that respondent took an interest in the minor's schooling, health, recreation, etc.
Further, even accepting as true respondent's representation that visitation between himself and the minor stopped because Mother ended it, there is no evidence that thereafter he asserted a right to custody or visitation, or even asked his parents (who continued to have visits with the minor) to intercede for him on the issue of visitation. Rather, he just let contact with the minor slide. (In re Spencer W., supra, 48 Cal.App.4th at p. 1654, 56 Cal.Rptr.2d 524.)
Moreover, the record is deficient on the issue whether respondent held the child out as his own. At the August 1, 2002 hearing, his attorney related that respondent "says he's held out to be the father." That is not the same as respondent holding himself out as the minor's father, and the same can be said for the fact that his mother carries pictures of the minor in her wallet. The only evidence that respondent proclaimed to the world in some fashion that he is the minor's father is his own paternity questionnaire. Additionally, there is no evidence that respondent took steps to have his name put on the minor's birth certificate, or sought tests to affirm paternity prior to his entry into the dependency case. (In re Spencer W., supra, 48 Cal.App.4th at p. 1654, 56 Cal.Rptr.2d 524.) As for whether he financially supported the minor, while he stated to the social worker that he and his parents brought clothes, food and toys for the minor approximately twice a month, there does not appear to be any elaboration as to how much of this joint effort actually fell on his shoulders.
Last, but certainly not least, while the minor acknowledged that respondent has *766 some sort of father status in her life, there is no indication she viewed him as a true family member. The record is clear that respondent lacks a "substantial familial relationship to the child. In such a case, the provision of [reunification] services does not `reunite' a family but creates a new one." (In re Sarah C. (1992) 8 Cal.App.4th 964, 975, 11 Cal.Rptr.2d 414.) The best respondent apparently has to offer on his relationship with the minor is his attorney's representation to the court at the disposition hearing that respondent had recently reestablished a relationship with the minor. Moreover, as we have observed, the Department advised the court that in its opinion, it would "not be in [the minor's] best interest to remove her from [R.B.] whom she has known since birth and with whom she has a close relationship in order to place her with another alleged father whom she barely saw as a toddler, with whom she does not have a relationship and who apparently has not provided for her."
We therefore find the record lacks substantial evidence to support the trial court's determination that respondent achieved presumed father status under section 7611, subdivision (d). Because respondent has no presumed father status, the trial court never needed to engage in the weighing process of subdivision (b) of section 7612 to determine whether his or appellant R.B.'s status should control.

6. Application of Subdivision (a) of Section 7612 to This Case

Although we have found that R.B. is a presumed father under subdivision (d) of section 7611, our analysis cannot end there. Such a presumption, as noted above, may be rebutted, in an appropriate action, by clear and convincing evidence. (§ 7612, subd (a).) While it is true that (1) in the instant case the results of the genetic tests constitute clear and convincing evidence of respondent's paternity, (2) section 7612, subdivision (a) analysis is generally a matter for a trial court's sound discretion (In re Nicholas H., supra, 28 Cal.4th at p. 59, 120 Cal.Rptr.2d 146, 46 P.3d 932), and (3) cases involving a trial court's discretion are generally returned to such court so that discretion may be exercised in the first instance there, nothing in the record in this case warrants sending the case back for section 7612, subdivision (a) analysis.
Instead, we can say as a matter of law that this is not an appropriate case in which to find that the presumption that R.B. is the minor's natural father has been rebutted by such clear and convincing evidence. We reiterate that the state's interest in these matters includes preserving developed parent-child relationships whether or not the father figure has biological ties to the child. (In re Nicholas H., supra, 28 Cal.4th at p. 65, 120 Cal.Rptr.2d 146, 46 P.3d 932.) Here, the record shows that R.B., his son R., and the minor are a family. It is families that the dependency statutes seek to keep together, and indeed in this case, despite having found that respondent is the presumed father, the trial court continued the minor's placement with R.B.

7. The Effect of Section 7612, Subdivision (c) on R.B.'s Presumed Father Status

Subdivision (c) of section 7612 ("subdivision (c)"), provides that a section 7611 presumption that a man is the natural father of a child "is rebutted by a judgment establishing paternity of the child by another man." (Italics added.) At the disposition hearing, the trial court asked how subdivision (c) applies to this case. The court wondered whether R.B. did not "even reach the level of presumption" because *767 respondent had been determined to be the minor's biological parent.
In addressing the court's question about the effect of subdivision (c), the attorney for the minor opined that the statute speaks of a judgment that establishes the paternity of a child, whereas in the instant case, the court had simply made a finding respecting the biological tests used to determine if respondent is the minor's natural father. The trial court disagreed, saying that its finding is a judgment.
We are thus presented with the issue whether to read subdivision (c) as the trial court did, and thereby find that because respondent was scientifically determined to be the minor's biological father, such determination necessarily rebuts R.B.'s section 7611, subdivision (d) presumed father status.
Subdivision (c) was applied in Barkaloff v. Woodward (1996) 47 Cal.App.4th 393, 55 Cal.Rptr.2d 167, to rebut the plaintiff's claim of presumed father status. Even though the facts of that case showed that the plaintiff qualified as a presumed father under section 7611, the presumption was rebutted because a stipulated judgment of paternity in favor of another man had been entered in another case.
The instant case is substantially different from Barkaloff. Here, the determination that respondent is the minor's biological father did not result in a judgment on that matter in another case. Rather, the determination was made in this very case. Moreover, there was no judgment in this case until the disposition order was made, since it is the disposition order that constitutes a judgment in a dependency case. (In re Megan B. (1991) 235 Cal.App.3d 942, 950, 1 Cal.Rptr.2d 177.) Thus, the trial court used a judgment that had not yet come into existence to conclude that R.B.'s presumed father status was rebutted. That was error. Using the determination of respondent's paternity to invoke application of subdivision (c) is like using a determination of guilt in a criminal case as an enhancement conviction for sentencing in that very case. Subdivision (c) clearly states that a section 7611 presumption is rebutted by a judgment; the judgment acts to preclude the issue of paternity from being redetermined. We thus reject the trial court's interpretation that a determination of biological parenthood in favor of one man in a dependency case necessarily defeats another man's section 7611's presumed father status in that same case.

DISPOSITION
The disposition order dated November 25, 2002, is reversed and the cause is remanded for further proceedings consistent with the views expressed herein. The trial court shall issue an order amending its November 25, 2002 disposition order, nunc pro tunc to that date, to (1) include orders that (a) R.B. is a presumed father of the minor, and (b) respondent is not a presumed father of the minor; and (2) delete the orders that (a) respondent is a presumed father of the minor, (b) R.B. is an alleged father of the minor, and (c) R.B. is granted de facto status and standing as to the minor.
We Concur: KLEIN, P.J., and ALDRICH, J.
NOTES
[1] The appeals by the minor's mother, the local agency handling dependency cases, and the person denied presumed father status proceed under appellate case number B163195. The appeal by the minor child proceeds under appellate case number B164378. The two appellate cases have been consolidated for disposition in a single opinion.
[2] In dependency proceedings, "fathers" are divided into four categories  natural, presumed, alleged, and de facto. The characteristics of these categories are addressed infra.
[3] Respondent's contention that R.B. was not prejudiced when the court found he is a de facto parent and denied him presumed father status finds no support in the law. A de facto parent's rights are quite limited and the fact that the court permitted the minor and her brother to continue to reside with R.B. does not change such limitation. (In re Cynthia C. (1997) 58 Cal.App.4th 1479, 1490-1491, 69 Cal.Rptr.2d 1.)
[4] The provisions in former Civil Code section 7004 are now found in Family Code sections 7611, 7611.5, and 7612. Unless otherwise indicated, all future references herein to statutes are to the Family Code.
[5] In In re Jerry P., the court observed that while section 7611 is part of the Uniform Parentage Act and its primary purpose "is to establish a child's paternity through a series of rebuttable presumptions," in dependency proceedings, section 7611 has a different purpose, namely to facilitate a determination "whether the alleged father has demonstrated a sufficient commitment to his paternal responsibilities to be afforded rights not afforded to natural fathers  the rights to reunification services and custody of the child." (In re Jerry P., supra, 95 Cal.App.4th at p. 804, 116 Cal.Rptr.2d 123, fn. omitted.)
[6] A statute with a similar directive to the trial court is section 7575, subdivision (b) which states that "if the court finds that the conclusions of all of the experts based upon the results of ... genetic tests performed ... are that [a] man who signed [a] voluntary declaration [of paternity] is not the father of the child, the court may set aside the voluntary declaration of paternity." (Italics added.) (In re Nicholas H., supra, 28 Cal.4th at pp. 63-64, 120 Cal.Rptr.2d 146, 46 P.3d 932.)
[7] That issue is now pending before the Supreme Court in In re Jesusa V. (S106843).*

*Reporter's Note: See 32 Cal.4th 588 for Supreme Court opinion.
[8] The trial court's decision that respondent is a presumed father of the minor was based on the results of the genetic tests, and on the facts that respondent previously had visitation with the minor, had lived with her for one to three months, and had "continued to maintain contact" with the minor since coming into the dependency case.
[9] These representations respecting respondent's visits with the minor are also second-hand evidence, made by his attorney to the court.