Filed 12/12/14  In re N.V. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re N.V., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.V.,<br><br>        Defendant and Appellant. | A141323<br><br>(San Francisco City & County Super. Ct. No. JD13-3176) |

**I.**

**INTRODUCTION**

After a contested hearing, the juvenile court found that A.V. (appellant) is not the presumed father of two-year-old N.V. (the minor).  Appellant appeals this determination contending substantial evidence does not support the juvenile court's finding.  Viewing all evidentiary conflicts and drawing all reasonable inferences in support of the order, as we must, we conclude substantial evidence supports the juvenile court's finding that appellant was not a presumed father and therefore was not entitled to reunification services.

## II.

## FACTS AND PROCEDURAL BACKGROUND

The minor was born in January 2012.  The mother's boyfriend, B.T., was present at the birth.  After the minor's birth, the hospital's social worker reported that mother was planning to reside with her boyfriend, B.T., and his parents.  The mother identified B.T., instead of appellant, as the minor's biological father.

On May 30, 2013, the San Francisco Human Services Agency (the Agency) became aware of the minor when an anonymous party reported that the minor was residing in a trailer that did not have heat, electricity, running water, or a front door.  The trailer was parked on a business property in San Francisco.  The reporting party alleged the minor was allowed to play on gravel and mother was taking drugs in the minor's presence.

On June 18, 2013, the Agency filed a petition under Welfare and Institutions Code section 300 alleging the minor was a child described by subdivisions (b) (failure to protect), (g) (no provision for support), and (j) (sibling abuse).[1]  The Agency's investigation revealed mother had a history of substance abuse, mental health issues, transience, criminal behavior, and that she had five other children who were not in her care or custody.  After the petition was filed, appellant contacted the Agency and stated he was the minor's father.

In the Agency's report filed on August 1, 2013, appellant is identified as the minor's alleged father.  It was noted that appellant "comes by [the mother's] trailer 2 to 3 times a week to check up on [the minor] and to provide the mother with supplies as needed."  The report also indicated that appellant had unstable housing, was unable to work, and did not have reliable resources to provide for the minor.  At the time, appellant was scheduled to be in San Francisco Drug Court's intensive outpatient drug program for the next 6 to 12 months.

---

[1]  All subsequent undesignated statutory references are to the Welfare and Institutions Code.

On August 7, 2013, the Agency filed an amended petition, identifying appellant as the minor's biological father. The amended petition alleged, among other things, that appellant was unable to provide for the minor, that he was incarcerated at the time of the petition's filing, and that he had another child who was currently the subject of a dependency action and for whom he was receiving reunification services.

A settlement conference on jurisdiction and disposition was held on August 7, 2013. Counsel was appointed for appellant and the parties were ordered to return for a detention hearing the next day.

On August 8, 2013, the Agency filed an addendum to the initial jurisdiction report. The addendum noted mother had been unable to follow through consistently with the minor's medical appointments, had failed to take advantage of the services offered to her, and had been unable to locate stable housing. The minor was eventually placed with the minor's godparents, who had been involved in the minor's life since the minor was three days old. They had taken the minor into their home on a consistent basis when she was in her mother's custody (weeknights and on weekends), they had provided her with care and stability, and they were willing to assume guardianship of the minor if necessary. The Agency noted the godparents "treat the minor as their own child" and the minor was "closely bonded to the godparents."

On August 8, 2013, appellant filed a Judicial Council form JV-505 (Statement Regarding Parentage). In this form, appellant stated the minor and mother had lived with him from March to June, 2012 and from September to December 2012. The parties entered into a stipulation on August 9, 2013, that appellant was the minor's biological father based upon DNA test results from March 6, 2013.

On December 5, 2013, a supplemental section 387 petition was filed stating that mother was discharged from her drug treatment program due to a positive drug test. The supplemental petition also indicated appellant was unable to provide care and support for the minor because he was in the San Francisco County Jail. On December 13, 2013, a referral was completed for appellant to begin weekly supervised visits with the minor at his residential substance abuse recovery program.

3

On January 14, 2014, appellant filed his first motion seeking presumed father status.[2]  In support of the motion, appellant declared, under penalty of perjury, that he was present at  the minor's birth and that the minor and mother lived with him after the minor's birth.  Thereafter, they continued to live with him "on and off in San Francisco" when mother was homeless.  Appellant also conceded to his "great regret and frustration" he never signed the minor's birth certificate.  He claimed that prior to entering a residential treatment facility where he currently resided, he "visited my daughter every other day since her birth with no exceptions."  He also claimed to have provided financial assistance to the minor, although the amount was not substantial "due to the fixed income I receive from [Social Security] disability."

In support of his motion for presumed father status, appellant submitted a letter from the residential drug treatment program that he had entered on December 12, 2013.  The letter states appellant expressed on numerous occasions "his daughter [has] been one of his primary source[s] of inspiration to seek recovery."  One of the program's missions was to "offer comprehensive services that assist in the reunification process."  While residing there, appellant had received two supervised visits from the minor.  It was reported by the program's clinical case manager that appellant was "attentive to her needs and there appears to be a strong bond between them."

Opposition was filed by the minor's counsel who indicated "[w]hile [appellant] has known [the minor], and visited her as he could, [appellant] has never assumed a parental role in her life, nor provided for her . . . day to day care, comfort and needs.  In fact, that role has been performed by [her godparents]."

On January 22, 2014, the court denied, without prejudice, appellant's motion for presumed father status on the ground that it was conclusory in nature.  On that date, the

---

[2]  "[T]he need to establish a father's status in a dependency proceeding is pivotal; it determines the extent to which he may participate in the proceedings and the rights to which he is entitled.  [Citation.]  [¶] . . . [¶] . . . '[O]nly a presumed . . . father is a "parent" entitled to receive reunification services under [Welfare and Institutions Code] section 361.5,' and custody of the child under Welfare and Institutions Code section 361.2.  [Citations.]"  (*In re M.C.* (2011) 195 Cal.App.4th 197, 211–212 (*M.C.*).)

4

Agency filed a second addendum report. That report noted that appellant's parental rights had been terminated in a separate dependency matter involving another child. The Agency recommended that supportive services be provided to appellant, not for the purposes of reunification, but in order for him to improve his parenting skills "because the minor's emotional, psychological, and social well-being would benefit . . . by building a relationship with her father."

On February 21, 2014, appellant's supplemental motion for presumed father status was filed, requesting an evidentiary hearing. The court held a contested evidentiary hearing on appellant's supplemental motion on March 11, 2014. The court heard testimony from two witnesses—appellant and the minor's godmother.

In his testimony, appellant indicated "I want to provide for [the minor], take care of her, I want her to live with me." He admitted that he was not present at the minor's birth and that the minor and the mother did not live with him after the minor's birth. In this respect, appellant's testimony conflicted with the declaration he submitted under penalty of perjury in support of his motion for presumed father status. He also gave a completely different account of the times he had allowed the mother and minor to reside in his home, which now added up to over a year in time, instead of just a few months. When cross-examined about the various and differing timeframes he claimed the minor and mother resided with him, appellant testified that he was not "good with dates" and was only "guessing [at] how long" the mother and minor stayed with him at his residence.

Appellant also admitted he never made any effort to put his name on the minor's birth certificate, sign a voluntary declaration of paternity, or petition the family court to obtain custody of the minor, even though he knew long before these dependency proceedings began that he was the minor's biological father. He testified the only reason he obtained DNA verification of his status as the minor's biological father was to allay his mother's concerns that the minor was not his child.

The minor's godmother testified that she got involved with the mother because the mother dated the godmother's brother at one time. The mother would call, and the

5

godmother would pick the minor up, frequently at hotels or motels where the mother could get a voucher, and the godmother would take the minor home for the night or for the weekend. The godmother indicated that when mother lived with appellant, "she would stay there for as long as she can, and then she would leave and then go back, stay there, and then leave." During the times the mother lived with appellant, the mother would still call on the godmother to care for the minor. Once or twice, appellant would come out and hand her the minor. She testified appellant would give her some diapers and formula and would always say "if I needed anything, let [him] know."

On March 13, 2014, after taking the matter under submission for two days, the court denied appellant's motion for presumed father status.[3] In doing so, the court was clearly troubled by the discrepancies between appellant's declaration filed in support of his motion seeking presumed father status and the testimony presented at the March 11, 2014 hearing. As to the minor and mother's residency with appellant, the court found that the time line "is anything but completely clear." However, the court held it was largely premised on "mother's wanderlust" instead of appellant's "proactive" efforts to build a family unit. The court also noted that appellant's paternity test, accomplished more than year after the minor's birth, was only obtained to reassure appellant's mother that the minor was indeed appellant's biological child and was not used to assert custody or as means getting his name on the birth certificate.

In the end, for the court, the pivotal question came down to "does [appellant] have a substantial familial relationship with this child?" The court observed "there is nothing in the record that talks about [appellant's] caretaking, his hand-on caretaking of this child. Whether it's feeding, cleaning up after her, changing her diapers, bathing her, putting her to bed, playing with her. . . . And there is really nothing there." Therefore, the court believed the "provision of services to [appellant] here in the absence of such a

---

[3] In reaching its decision, the court indicated it was not considering appellant's other dependency case and was not considering certain pleadings filed by the minor's counsel opposing appellant's motion for presumed father status.

6

relationship isn't really reuniting a family, it is attempting to create a new one." This appeal followed.

## III.

## DISCUSSION

### A. Standard of Review

"We review a juvenile court's determination of presumed parentage status under the substantial evidence standard. [Citations.] '[W]e review the facts most favorably to the judgment, drawing all reasonable inferences and resolving all conflicts in favor of the order. [Citation.] We do not reweigh the evidence but instead examine the whole record to determine whether a reasonable trier of fact could have found for the respondent. [Citation.]' [Citation.]" (*M.C.*, *supra*, 195 Cal.App.4th at p. 213.)

### B. Statutory Background

"The Uniform Parentage Act (Fam. Code, § 7600 et seq.) (Act) provides the statutory framework by which California courts make paternity determinations. [Citations.] Under this statutory scheme, California law distinguishes 'alleged,' 'biological,' and 'presumed' fathers. [Citation.] 'A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an "alleged" father. [Citation.]' [Citation.] 'A biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status . . . .' [Citation.]" (*In re J.L.* (2008) 159 Cal.App.4th 1010, 1018, fn. omitted.)

"Presumed father status ranks highest." (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801 (*Jerry P.*).) Presumed fathers are vested with greater parental rights than alleged or biological fathers. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 448–449.) " '[O]nly a presumed . . . father is a "parent" entitled to receive reunification services under [Welfare and Institutions Code] section 361.5,' and custody of the child under Welfare and Institutions Code section 361.2. [Citation.]" (*M.C.*, *supra*, 195 Cal.App.4th at p. 212; *Jerry P.*, *supra*, 95 Cal.App.4th at p. 801.)

7

Family Code section 7611 sets forth several rebuttable presumptions under which a man may qualify as a presumed father, only one of which is pertinent here. Family Code section 7611, subdivision (d) provides a person is presumed to be the natural parent of a child if the person "receives the child into his or her home and openly holds out the child as his or her natural child." "The statutory purpose [of Family Code section 7611] is to distinguish between those fathers who have entered into some familial relationship with the mother and child and those who have not. [Citation.]" (*In re Sabrina H.* (1990) 217 Cal.App.3d 702, 708; *In re T.R.* (2005) 132 Cal.App.4th 1202, 1209 (*T.R.*).)

A man seeking presumed father status bears the initial burden of proving by a preponderance of the evidence that he satisfied the requirements of Family Code section 7611, subdivision (d). (*T.R.*, *supra*, 132 Cal.App.4th at p. 1210; *Charisma R. v. Kristina S.* (2009) 175 Cal.App.4th 361, 368 (*Charisma R.*), disapproved on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7.) He has the burden of establishing (1) that he physically brought the minor into his home, and (2) that he openly and publicly acknowledged paternity. (*In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1652 (*Spencer W.*).) Where the man is not living with the child's mother, it is not necessary that the child live with the man on a full time basis; it is sufficient if the evidence shows regular visits and a consistent involvement. (See *In re A.A.* (2003) 114 Cal.App.4th 771, 784 (*A.A.*).)

**C. Substantial Evidence Supports Denial of Presumed Father Status**

The evidence showed appellant openly held the minor out as his natural child; and the trial court did not find otherwise. (See Fam. Code, § 7611, subd. (d).) The trial court, however, found that appellant did not receive the child into his home within the meaning of the presumed father statute. In arguing this finding is unsupported, appellant points to favorable evidence in the record indicating that appellant took the mother and minor into his home when they were homeless, although the duration and frequency of these occasions was the subject of conflicting evidence. He also emphasizes that his commitment to the minor's care and well-being was demonstrated by evidence that he consistently visited with the minor when she was in her mother's custody and supplied

8

her with food and diapers.  Appellant argues that the foregoing favorable facts establish that he "receive[d]" the minor into his own home.  (Fam. Code, § 7611, subd. (d).)

If the requirement of receipt into one's home could be satisfied by evidence of a visit or brief stay by the child in a father's residence, we would have no choice but to reverse the trial court's finding that appellant was not entitled to presumed father status.  However, this requirement has been given more substantive meaning by the courts.  Under Family Code section 7611, "the father's rights flow from his *relationship* . . . to the mother and/or child and not merely from his status as the biological father."  (*In re Sarah C.* (1992) 8 Cal.App.4th 964, 972, italics added; *Spencer W.*, *supra*, 48 Cal.App.4th at pp. 1654-1655 ["presumed father status is earned based on a commitment toward developing a 'substantial familial relationship to the child' "]; *A.A.*, *supra*, 114 Cal.App.4th at p. 787 [presumed father finding reversed as to biological father who never established himself as "a true *family* member"].)  To satisfy this standard, receipt into the home must be substantial enough to signify assumption of parental responsibility for the child.  (See *Charisma R.*, *supra*, 175 Cal.App.4th at p. 374 ["receipt of the child into the home must be sufficiently unambiguous as to constitute a clear declaration regarding the nature of the relationship, but it need not continue for any specific duration"].)

"In determining whether a man has 'receiv[ed a] child into his home and openly h[eld] out the child' as his own [citation], courts have looked to such factors as whether the man actively helped the mother in prenatal care; whether he paid pregnancy and birth expenses commensurate with his ability to do so; whether he promptly took legal action to obtain custody of the child; whether he sought to have his name placed on the birth certificate; whether and how long he cared for the child; whether there is unequivocal evidence that he had acknowledged the child; the number of people to whom he had acknowledged the child; whether he provided for the child after it no longer resided with him; whether, if the child needed public benefits, he had pursued completion of the requisite paperwork; and whether his care was merely incidental.  [Citations.]"  (*T.R.*, *supra*, 132 Cal.App.4th at p. 1211.)  However, "*In re T.R.* does not require an alleged

9

parent to show each and every one of these factors exists. Instead, it lists the types of factors trial courts may consider." (*Charisma R.*, *supra*, 175 Cal.App.4th at p. 376.)

Viewing the juvenile court's extensive and considered comments, there is no question that in determining whether or not appellant was a presumed father, the court considered the appropriate factors. In doing so, appellant's credibility with the court was severely undermined, given the number of in-court admissions that varied from appellant's sworn declaration. The court pointed out that, despite his sworn declaration to the contrary, the evidence demonstrated appellant was not present at the minor's birth, nor did the mother and minor reside with him after the minor's birth. Also, appellant gave vastly different accounts of the frequency and duration of the times the minor and mother resided with him, creating uncertainty on this key point. For example, appellant claimed initially that he visited the minor every other day since her birth, with no exceptions, but the court pointed out "that clearly wasn't the testimony."

Furthermore, as the trial court emphasized, there was evidence undermining the inference that appellant's sporadic periods of cohabitation with mother and the minor reflected a commitment to assuming full parental responsibility for his child. According to appellant, the minor and mother moved in with him during the periods when she called him and had no other place to go. The trial court legitimately saw this as living together by necessity, as opposed to appellant's "proactive" efforts to build a family unit.

Most importantly, there was no evidence that during the times he lived with the minor appellant was involved in day-to-day parental-type tasks or that his care was other than incidental. The godmother testified that during these times, she was still called upon to take the minor into her home. The court in *A.A.*, *supra*, 114 Cal.App.4th 771, concluded that the biological father was not entitled to presumed father status, even though he had lived with the child for one to three months in someone else's home. (*Id.* at p. 786.) The appellate court noted that the biological father had avoided "the constant parental-type tasks that come with having the child in his own home—such as feeding and cleaning up after the minor, changing her clothing bathing her, seeing to her naps,

putting her to bed, taking her for outings, playing games with her, disciplining her, and otherwise focusing on the child." (*Id.* at pp. 786-787.)

Appellant's failure to provide any evidence on this point supports the juvenile court's finding that appellant failed to " 'demonstrate[ ] a full commitment to his paternal responsibilities—emotional, financial, and otherwise[.]' " (*Jerry P.*, *supra*, 95 Cal.App.4th at pp. 801-802, fn. omitted; *Spencer W.*, *supra*, 48 Cal.App.4th at pp. 1654-1655.)

Consequently, we find the aforementioned evidence supports the juvenile court's finding that appellant did not meet his burden of proof for establishing that he was entitled to presumed father status under Family Code section 7611, subdivision (d).

## IV.

## DISPOSITION

The order denying appellant presumed father status is affirmed.

_____
RUVOLO, P. J.

We concur:

_____
REARDON, J.

_____
RIVERA, J.

11