Filed 10/4/21  In re A.W. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| In re A.W., et al., Persons Coming Under Juvenile Court Law. | B310407 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.E.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20LJJP00076A) |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore. Affirmed.

Tungsten Legal and Elena S. Min, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

---

**INTRODUCTION**

Family Code section 7611 provides that a parent may be deemed a presumed parent if the parent "receives the child into their home and openly holds out the child as their natural child." (Fam. Code, § 7611, subd. (d).) In the proceedings below, the juvenile court declined to deem appellant-father D.E. the presumed father of A.W. (born August 2007), finding he had failed to meet these requirements. On appeal, Father contends the court erred because the evidence established that he had received A.W. into his home and openly held her out as his natural child. Because substantial evidence supported the court's finding, and Father's evidence did not compel a different conclusion, we affirm.

**STATEMENT OF RELEVANT FACTS**

**A.    *DCFS Investigates a Referral***

In December 2019, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging that non-party mother Staci W. instructed 12-year-old A.W. to call a family friend to request

2

money, and to agree to permit the friend to molest A.W. in exchange. It was also alleged that Mother was a drug abuser, rendering her incapable of caring for A.W. and her two half-siblings, that Mother was involved in domestic violence, and that Mother sold marijuana. While DCFS found no evidence to substantiate the allegations of potential sexual abuse, Mother twice tested positive for cocaine during the investigation. In January 2020, the court ordered A.W. and her two half-siblings removed.[1]

### B. *DCFS Files a Petition and Continues Investigating*

In February 2020, DCFS filed a petition under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1). Counts a-1 and b-2 identically alleged Mother and a "male companion" had a history of engaging in domestic violence in the children's presence.[2] Count b-1 alleged Mother had a history of substance abuse, and the children were under her care and supervision while she was under the influence. At the detention hearing, the court deemed Father the alleged father of A.W., noting he could "absolutely change [his status as alleged] at some later and appropriate date." The court detained the children.

---

[1] At the time of the referral, the petition, and the proceedings below, Father was incarcerated.

[2] The "male companion" was not the father of any of the children, and was not involved in the proceedings below.

When DCFS discussed with the children their views on placement, A.W. stated that she viewed Aaron W. (the father of one of her half-siblings) as a father figure, and referred to him as "dad." Aaron confirmed he viewed all three children as his, and stated he had been involved in A.W.'s life "since she was a baby." He claimed he held himself out as A.W.'s father and had been the "primary father figure" in her life.

Mother explained that shortly after meeting Father when they were both 16, she became pregnant with A.W. Prior to giving birth, Mother went to live with an aunt in Palmdale and lost contact with Father until after she gave birth. Mother stated that Father remained in contact with her and A.W. until he was incarcerated when A.W. was two years old.[3] Mother reported that Father had not been an active parent in A.W.'s life. Mother confirmed that after she met Aaron W. around 2007, he became a father figure to A.W., and that A.W. viewed him as a father.

### C.     *The Court Finds Father Is Not A.W.'s Presumed Father*

A July 2020 last minute information noted that on July 9, DCFS received a call from Father, who stated he held himself out to be A.W.'s father, and that prior to his incarceration in 2009, "he had regular visitation (monthly) with his daughter" and had provided approximately $5,000

---

[3]     Mother stated she believed he received a sentence of 13 or 14 years.

4

in financial support for her. Father asked for an attorney to be appointed on his behalf, and requested that he be deemed A.W.'s presumed father. On September 15, 2020, Father filed a parentage statement, claiming he had told "everyone" A.W. was his daughter, that A.W. had visited her paternal grandmother, that he "visited [A.W.] a few times per week prior to being incarcerated," and that he had given money for "food, clothes, baby supplies, diapers, bottles, etc." At a September 2020 hearing, over Father's objection, the court stated it would "keep its original finding that . . . [Father] is the alleged father."

At the October 2020 adjudication hearing, Mother pled no contest to counts b-1 and b-2; the court noted Father was non-offending. A December 2020 last minute information noted that Aaron had stated he would be willing to have all three children placed with him.

At the January 2021 disposition hearing, Father's counsel asked the court to reconsider its prior paternity finding, arguing Father had accepted A.W. into his home, regularly visited her, and provided financial support, and there was no other presumed father. A.W.'s counsel submitted the issue to the court. DCFS's counsel objected, arguing that Father was not present at the child's birth, was not named on the birth certificate, had lost contact with Mother when A.W. was born, had been incarcerated since A.W. was two years old, and had not been active in the child's life for ten years. The court declined to change Father's status, stating it agreed with the "facts in the

assessment stated by" DCFS's counsel, adding that Father had "not played a significant part in [A.W.]'s life for . . . almost a decade, and therefore does not rise to the status of presumed father." While the court permitted Father to have monitored contact with A.W., it rejected Father's request for reunification services because "he is an alleged father." Father timely appealed.

## DISCUSSION

### A. *Standard of Review*

The parties disagree on the standard of review. Father contends we should review any paternity finding for substantial evidence. (See, e.g., *In re Cheyenne B.* (2012) 203 Cal.App.4th 1361, 1371 ["With respect to [the father's] section 7611, subdivision (d) contention [that he should have been deemed a presumed father], our review of the trial court's findings is limited to considering whether substantial evidence supports such findings"]; *In re A.A.* (2003) 114 Cal.App.4th 771, 782 ["In considering appellants' challenge to the trial court's finding that R.B. is not a presumed father . . . we apply the substantial evidence test"].)

However, Father had the burden of proof to establish the presumption under Family Code section 7611. (*In re A.A., supra,* 114 Cal.App.4th at 782 [person asserting statutory presumption of being presumed parent has "'the burden of establishing by a preponderance of the evidence that there were present two elements necessary to invoke the presumption: reception [of the minor] into [his] home

6

and openly and publicly acknowledging paternity"'].) On this basis, DCFS argues we should review "whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7; see also *In re R.V.* (2015) 61 Cal.4th 181, 218 ["'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding"'"], quoting *In re I.W.*, *supra*, at 1528.)[4] Though we agree with the standard of review articulated in *In re I.W.* and *In re R.V.*, we need not resolve the debate, as we find both that Father's evidence did not compel a finding that he

---

[4]     Father claims in his reply brief that this standard was "expressly rejected" in *Conservatorship of O.B.*, *supra*, 9 Cal.5th 989. In *O.B.*, our Supreme Court clarified ["how an appellate court is to review the sufficiency of the evidence associated with a finding made by the trier of fact pursuant to the clear and convincing standard"] (*Id.* at 995.) The court concluded that "appellate review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands." (*Ibid.*) We fail to see how this holding rejects the standard of review urged by DCFS.

was a presumed father, and that substantial evidence supported the court's finding that he was not.

### B. *The Court Did Not Err in Refusing to Deem Father a Presumed Father*

"""Presumed fatherhood, for purposes of dependency proceedings, denotes one who 'promptly comes forward and demonstrates a full commitment to . . . paternal responsibilities—emotional, financial, and otherwise.'""" (*In re Cheyenne B., supra,* 203 Cal.App.4th at 1364, fn. 2.) "A 'caretaking role and/or romantic involvement with a child's parent' is not enough to qualify." (*In re M.Z.* (2016) 5 Cal.App.5th 53, 63.) "A person is presumed to be the natural parent of a child if the person . . . [¶] . . . [¶] receives the child into their home and openly holds out the child as their natural child." (Fam. Code, § 7611, subd. (d).) DCFS does not dispute that Father held A.W. out as his child, provided approximately $5,000 in financial support for her, and visited regularly for the first two years of her life.[5] Father does not dispute that A.W. never lived with him, and that after he was incarcerated, he played no role in her life. Nor does he claim his visits with A.W. occurred in his home. If A.W. never lived with Father and never visited him at his home, Father did not "receive[] the child" into his home, and therefore cannot have established the presumption unless he

---

[5]     As noted, in July, Father informed DCFS that he had visited A.W. monthly; in a form submitted to the court in September, Father represented that he visited her weekly.

demonstrated receipt in some other manner. In his reply brief, Father "acknowledges the record provides no evidence [A.W.] actually lived with him," but argues he met the requirement by demonstrating "regular visitation." (See, e.g., *In re Cheyenne B., supra,* 203 Cal.App.4th at1379 ["the law recognizes an alternative means of satisfying the first requirement under section 7611, subdivision (d) by evidence of regular visitation"].) However, "regular visitation" requires more than frequent visits.

We find instructive the case of *In re A.A., supra,* 114 Cal.App.4th 771. There, the biological father lived with the mother and child for one to three months before the child was a year old and visited the child in other people's homes alternate weekends thereafter until she was four (at which point the mother cut the visits off). With help from his parents, the biological father provided for some of the child's necessities. (*Id.* at 784-788.) On the other hand, another man (R.B.) had the minor visit in his own home, and personally bought her clothes, food, toys, and other essentials. (*Id.* at 783.) R.B. held himself out as the minor's father, and stayed in contact with her until the time of the dependency case. (*Id.* at 784.) Nevertheless, the trial court found the biological father should be deemed the presumed father over R.B. (*Id.* at 778, 784, 788.)

The appellate court reversed. Regarding the biological father, the court found that even if he had visited the minor on a regular basis, because there was no explanation as to why the visits occurred in other people's homes, "such

9

visitation can be seen as a matter of convenience" in that "[b]y visiting the minor at the maternal grandmother's home and at his parents' home, respondent could avoid the constant parental-type tasks that come with having the child in his own home—such as feeding and cleaning up after the minor, changing her clothing, bathing her, seeing to her naps, putting her to bed, taking her for outings, playing games with her, disciplining her, and otherwise focusing on the child." (*In re A.A., supra,* 114 Cal.App.4th at 786-787.) The court noted there was "no indication of what he did with the minor during his visits" and no evidence he "took an interest in the minor's schooling, health, recreation, etc." (*Id.* at 787.) The court further observed that the biological father never asserted a right to custody or visitation after the mother stopped the visits, and noted there was no indication the minor viewed him as a family member. (*Ibid.*) By contrast, the appellate court found that R.B. was involved with the minor "from the very beginning" and provided financially for her needs, buying her clothes, toys, food, and other essentials, and that the minor visited R.B. often in his home and was bonded with him. (*Id.* at 784.) Therefore, the appellate court concluded that "the evidence is not sufficient to support the trial court's determination that R.B. has not obtained presumed father status under subdivision (d) of section 7611. As a matter of law, he has met the elements of that statutory presumption." (*Ibid.*)

Father argues his situation is analogous to R.B.'s situation, and thus we, too, should find he met the elements

of the statutory presumption as a matter of law. But we agree with DCFS that Father's situation is more akin to the biological father's in *A.A.* Like the appellate court in *A.A.*, we find it insufficient that Father visited A.W. on a regular basis when the visits took place outside his home, as "[b]y visiting the minor at [other locations], . . . the biological father could avoid the constant parental-type tasks that come with having the child in his own home . . . ." (*In re A.A.*, *supra*, 114 Cal.App.4th at 776.) Similarly, there is no evidence of what Father did with A.W. during these visits, or even evidence that he interacted with her at all. Additionally, after his incarceration, Father did not keep in contact with A.W., and played no role (parental or otherwise) in her life for over a decade. In short, there is little if any evidence that Father and A.W. ever had a "'fully developed parental relationship.'" (*In re M.Z., supra,* 5 Cal.App.5th at 63 ["A person requesting presumed parent status under section 7611, subdivision (d) must have a 'fully developed parental relationship' with the child"]; see also *In re A.A.*, *supra*, at 779 [presumed father "'denotes one who "promptly comes forward and demonstrates a full commitment to . . . paternal responsibilities—emotional, financial, and otherwise"'"].) We therefore find both that substantial evidence supports the court's determination that Father did not meet the requirements of the presumption stated in

Family Code section 7611, subdivision (d), and that Father's evidence did not compel a contrary conclusion.[6]

---

[6] Father additionally argues that the court erred in finding the presumption of presumed parenthood rebutted. Our review of the record reveals the court did no such thing. Instead, as discussed, the court found Father never established the presumption.

**DISPOSITION**

The court's order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

CURREY, J.

13